**Wayne Dale SCHELL, Petitioner–Appellant,**

v.

**Larry WITEK, Warden; Bill Lockyer, Attorney General, State of California,[1] Respondents–Appellees.**

**No. 97–56197.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 23, 2000

Filed July 11, 2000

1. Bill Lockyer is substituted for his predecessor, Daniel E. Lungren, as Attorney General for the State of California. Fed. R.App. P. 43(e)(2).

Carol A. Klauschie, Pasadena, California, for the petitioner-appellant.

Steven D. Matthews, Deputy Attorney General, Los Angeles, California, for the respondents-appellees.

Before: HUG, Jr., Chief Judge, SCHROEDER, PREGERSON, O'SCANNLAIN, TROTT, FERNANDEZ, TASHIMA, THOMAS, SILVERMAN, GRABER, and FISHER, Circuit Judges.

## OVERVIEW

TROTT, Circuit Judge:

Wayne Dale Schell ("Schell") appeals a district court judgment denying his 28 U.S.C. § 2254 pro se petition for a writ of habeas corpus.[2] Without holding a requested evidentiary hearing into Schell's claims, the court predicated its decision on the Report and Recommendations of a magistrate judge. We have jurisdiction of this timely appeal pursuant to 28 U.S.C. § 2253.

Schell asserts three points of allegedly constitutional error: (1) that the state's case lacked sufficient evidence to support the jury's verdict finding him guilty of burglary, (2) that the state trial court violated his right to counsel by failing to rule on his pre-trial motion requesting substitute counsel, and (3) that his appointed counsel's defense of him at trial was preju-

dicially deficient. Schell asks us at a minimum to remand his case to the district court for an evidentiary hearing to explore two intertwined matters related to his Sixth Amendment right to counsel: (1) the effect of the state trial court's failure to rule on his motion for substitute counsel, and (2) whether counsel's representation of him at trial was fatally ineffective and prejudicial.

We hold that there was sufficient evidence for a reasonable jury to convict Schell of residential burglary. We hold also that the state trial court's failure to make a formal inquiry into the nature and extent of the conflict between Schell and his counsel was error. Furthermore, on the facts of this case, Schell's allegation that his counsel failed to consult a fingerprint expert could have—if true—constituted ineffective assistance of counsel. We therefore remand this case to the district court for an evidentiary hearing. This hearing shall determine (1) the nature of the alleged irreconcilable pre-trial conflict between Schell and his attorney, (2) whether that conflict constructively deprived Schell of his Sixth Amendment right to be represented by counsel, (3) whether counsel's handling of his defense was constitutionally deficient, and (4) if that defense was ineffective, whether that performance deficiency was prejudicial as defined in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## BACKGROUND

On February 8, 1991, Emile Husinger's ("Husinger") apartment was burglarized. The burglar stacked two milk crates on top of each other, removed a screen, and entered the apartment through a louvered window more than six feet off the ground. The burglar left the screen outside the apartment near the milk crates. Two of the louvered window panes removed by

---

**2.** Schell averred indigency and requested appointment of counsel, but the magistrate judge denied his request.

the burglar were placed on a microwave oven inside the apartment. On the interior surface of one of the louvered panes, police discovered a fingerprint that, according to a state's expert witness, matched one of Schell's fingerprints. Based on that fingerprint, Schell was charged with burglarizing Husinger's apartment.

A public defender was appointed to defend Schell. Two days before trial, and after a protracted series of disagreements between the two about how to combat the state's fingerprint evidence, Schell's attorney informed the court in her client's absence that a conflict had arisen between herself and Schell about how to prepare his defense, and that Schell wanted the court to relieve her and to appoint substitute counsel. Under California law, this in shorthand is called a "Marsden motion." *See People v. Marsden,* 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44 (1970). Normally, the essence of such a motion is that appointed counsel's representation has in some significant measure fallen below the level required by the Sixth Amendment.

The trial court did not rule on this motion, presumably because Schell was not present in the courtroom when it was made. During the next two days, Schell's case was transferred to a different judge, and the motion requesting substitute counsel was never addressed. Apparently, it simply got lost in the shuffle. According to Schell, when he asked his attorney before the start of his trial about the disposition of his pending motion for substitute counsel, she told him that the motion must

have been denied because she was still his attorney. The record contains no support, either factual or legal, for counsel's alleged explanatory statement.

At trial, the same public defender represented Schell. A jury found him guilty as charged. On direct appeal, Schell argued that the trial court erred in failing to hold a hearing on his motion for substitute counsel. He requested that the case be removed to the trial court for the equivalent of a *Marsden* hearing.[3] The California Court of Appeal affirmed Schell's conviction, holding on the record that Schell had waived or abandoned his motion for substitute counsel, "and there was no error resulting from the court's failure to rule on it." His request for a remand and a hearing was rejected. Schell's petition for direct review by the California Supreme Court was denied.

Next, Schell filed a petition for a writ of habeas corpus in California state court. The trial court denied his petition, as did the California Court of Appeal and the California Supreme Court. A second petition was equally unsuccessful. No state tribunal held a hearing to explore Schell's allegations against his lawyer.

Schell then filed this petition in federal court. A magistrate judge concluded without an evidentiary hearing (1) that Schell was not prejudiced by the state court's *Marsden* lapse; (2) that sufficient evidence supported his conviction; and (3) that his counsel's representation of him was effective. The district court then denied his petition. This appeal followed.[4]

---

3. The usual remedy in California for failure to hold a *Marsden* hearing is to remand the case to the trial court for a post-trial *Marsden* hearing, giving the trial court wide latitude to correct any error it may uncover. *See People v. Olivencia,* 204 Cal.App.3d 1391, 1400–02, 251 Cal.Rptr. 880 (1988).

4. The Supreme Court recently decided that the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") regarding the issuance of a certificate of appealability ("COA") as a predicate to review in the court of appeals apply to all cases in which the

notice of appeal was filed after AEDPA's effective date, April 24, 1996. *See Slack v. McDaniel,* — U.S. —, —, 120 S.Ct. 1595, 1603, 146 L.Ed.2d 542 (2000). Schell's appeal falls within this category. Consistent with *Slack,* we treat Schell's notice of appeal in this case as an application for a COA. *See id.* We conclude that he has made the requisite "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), with respect to his claims. We therefore grant the COA and exercise jurisdiction over these issues on appeal.

## STANDARD OF REVIEW

We review de novo a district court's denial of a § 2254 habeas petition. *See Eslaminia v. White*, 136 F.3d 1234, 1236 (9th Cir.1998). We may grant an application for a writ of habeas corpus "*only* on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a) (1994) (emphasis added). A federal court reviewing a state court determination in a habeas corpus proceeding ordinarily applies a harmless error standard, examining whether the error "had substantial and injurious effect or influence" on the trial. *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637, 113 S.Ct. 1710.

## DISCUSSION

### I Sufficiency of the Evidence

Schell claims that his conviction violated his constitutional due process rights as delineated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). He argues that the judgment of conviction was based on insufficient evidence to support the verdict that he was guilty of burglary. We respectfully disagree.

To support his claim that one fingerprint on a glass louver was insufficient to prove he committed the crime, Schell relies on our decision in *Mikes v. Borg*, 947 F.2d 353 (9th Cir.1991). In *Mikes*, the victim was killed with a post from a disassembled turnstile that had been purchased at a hardware store four months before the crime. *Id.* at 355. The defendant's fingerprints were discovered, among other fingerprints, on one of the posts. *Id.* Those fingerprints were the only evidence linking the defendant to the crime. *Id.* In addressing Mikes's claim that the finger-

print evidence alone was insufficient to support his conviction, we noted:

> fingerprint evidence alone may under certain circumstances support a conviction. However, in fingerprint-only cases in which the prosecution's theory is based on the premise that the defendant handled certain objects *while committing the crime in question*, the record must contain sufficient evidence from which the trier of fact could reasonably infer that the fingerprints were in fact impressed at that time and not at some earlier date. In order to meet this standard the prosecution must present evidence sufficient to permit the jury to conclude that the objects on which the fingerprints appear were inaccessible to the defendant prior to the time of the commission of the crime.

*Id.* at 356–57 (internal citations omitted) (emphasis in original). In *Mikes*, we held that the fingerprint evidence on the turnstile post was insufficient to support a conviction, because the post had been in a public place shortly before the crime. *Id.* at 358–59. The facts and circumstances surrounding the fingerprints did not support a reasonable inference that they were placed on the post at the time of the crime.

The question of what logical inferences can be drawn from particular fingerprint evidence was raised again in *Taylor v. Stainer*, 31 F.3d 907 (9th Cir.1994). In *Taylor*, the victim was killed in her apartment. *Id.* at 908. Police believed that the assailant had entered the apartment through the kitchen window. *Id.* On the bottom inside edge of the windowsill, the police discovered a fingerprint that matched Taylor's. *Id.* The fingerprint was the only evidence linking Taylor to the crime. *Id.* We held that the fingerprint constituted sufficient evidence to support the conviction because the inside of the victim's windowsill was not a public place and, unlike the turnstile post in *Mikes*, the fingerprint on the inside of the windowsill could not have been placed there at any

time except during the commission of the crime. *Id.* at 909–10.

In this case, the fingerprint was obtained from the interior of one of the two lower panes of a louvered window removed during the burglary. The window was more than six feet off the ground in a gated yard, and not near a public walkway. As in *Taylor*, any jury reasonably could have inferred that Schell left his fingerprint on the inside of the screen-protected window during the commission of the burglary.

In an attempt to align his case with *Mikes*, Schell argues that the louver pane was removable and replaceable, and that Schell's fingerprint might have been placed on the pane before it was purchased by Husinger. This purely speculative argument is rebutted by the record. *See Taylor*, 31 F.3d at 910 ("The existence of some small doubt based on an unsupported yet unrebutted hypothesis of innocence is not sufficient to invalidate an otherwise legitimate conviction."). Husinger testified that she washed the windows every six months. Nothing in the record suggests that the pane had been purchased within the last six months. Moreover, the evidence in the record is irreconcilable with the assertion that Schell—who was a stranger to Husinger—might have innocently touched the inside of the louver in her home on some previous occasion. Although Schell was not required to prove how his fingerprint got on Husinger's window pane, his argument unpersuasively attempts to degrade the evidentiary effect of the fingerprint "through far-fetched, unsupported speculation." *Id.*

█ "There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nelson*, 137 F.3d 1094, 1103 (9th Cir.1998). In order to establish sufficient evidence, "the prosecution need not

affirmatively 'rule out every hypothesis except that of guilt.'" *Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (plurality opinion) (quoting *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781). Moreover, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* at 296–97 (quoting *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781). Viewing these facts in the light most favorable to the State, we hold that a reasonable jury could find Schell guilty beyond a reasonable doubt, as happened in this trial.

## II Motion for Appointment of Substitute Counsel

█ The denial without a hearing of a motion to substitute appointed counsel based on allegations of an "irreconcilable conflict" implicates the defendant's Sixth Amendment right to counsel. It follows that Schell's claim is properly considered in a habeas petition. *See Bland v. California Dep't of Corrections*, 20 F.3d 1469, 1475 (9th Cir.1994); *Hudson v. Rushen*, 686 F.2d 826, 827–28 (9th Cir.1982).

### A. Waiver and Abandonment

█ Preliminarily, the State argues that Schell waived and abandoned this Sixth Amendment claim by failing to reassert it before the state court before trial.[5] The general rule is that "'[c]onstitutional rights may ordinarily be waived [only] if it can be established by clear and convincing evidence that the waiver is voluntary, knowing, and intelligent.'" *Gete v. INS*, 121 F.3d 1285, 1293 (9th Cir.1997) (alteration in original) (quoting *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1394 (9th Cir.1991)); *see also Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (holding that

---

**5.** The state has not raised, either in its briefs or during argument, procedural default or an

adequate and independent state ground as a defense to Schell's petition.

waiver of a constitutional right "is ordinarily an intentional relinquishment or abandonment of a known right or privilege"). Additionally, the Court has instructed that we must "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Id.*

In support of its argument, the State cites cases in which parties have waived arguments by failing to reassert them. *See White v. McGinnis,* 903 F.2d 699, 703 (9th Cir.1990) (en banc) ("[K]nowing participation in a bench trial without objection is sufficient to constitute a jury waiver."); *see also United States v. Holmquist,* 36 F.3d 154, 165–66 (1st Cir.1994) (holding that a defendant waived his argument by not offering evidence that the court had ruled was inadmissible unless it was first proffered to the judge outside of the presence of the jury). These cases are distinguishable. Schell did not know that the state court had failed to address his motion and, unlike *Holmquist,* in this case the judge did not make a tentative ruling and invite Schell to reargue it at a later time. We note that in *United States v. Taglia,* 922 F.2d 413, 416 (7th Cir.1991), the Seventh Circuit held that a defendant waived his motion to sever by failing to reassert it after the motion had been lost in the shuffle. The Seventh Circuit noted that, "[i]f a motion is not acted upon, a litigant had better renew it. He may not lull the judge into thinking that [a motion] has been abandoned and then, after he has lost, pull a rabbit out of his pocket in the form of the forgotten motion." *Id.*

In this case, the record does not support the State's claim of waiver. Because of a fractious conflict in their approach to trial preparation and strategy, Schell, through his appointed attorney, made a motion requesting substitute appointed counsel. The state court did not dispose of Schell's motion at that time, most probably because Schell was not present. Apparently, that motion was overlooked when the case was reassigned to a different court, and the motion simply was never addressed. When Schell asked his counsel about the disposition of the motion, his attorney told him that the motion must have been denied because she was still Schell's attorney. There is nothing in the record to suggest that Schell knew of the court's inadvertent error. To the contrary, Schell claims to have reasonably believed, on the basis of advice from his appointed lawyer, that his motion had been disposed of. In the alternative, of course, if his attorney did indeed tell him, because she was still his attorney, that the motion must have been denied, such a legally baseless statement could itself constitute ineffective representation with respect to the motion to relieve and to substitute.

We hold that Schell did not voluntarily, knowingly, and intelligently waive a motion that he reasonably believed was denied. To hold otherwise would put too large a burden on criminal defendants who are represented by appointed counsel.

## B. Failure to Address the Motion Requesting Substitute Counsel

■ Our primary reason for accepting this case for en banc review was to correct the standard of review we have been using to examine the constitutionality of a state court's handling of a motion to substitute appointed counsel based on allegations of an irreconcilable conflict.[6] In *Bland,* we said that the test is whether a state court's denial of such a motion was for "an abuse of discretion." *Bland,* 20 F.3d at 1475. In *Bland,* we described our considerations in reviewing the discretion exercised in the denial of the motion as "(1) timeliness of the motion; (2) adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great

---

**6.** One source of our previous statement of the standard was *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), in which both Chief Justice Burger, writing for the majority, and Justice Brennan, writing in dissent, repeatedly describe the issue in a habeas case containing a substitution of counsel/continuance issue as whether the trial court "abused its discretion" in handling the matter.

that it resulted in a total lack of communication preventing an adequate defense." *Id.* This protocol, of course, is the correct methodology for reviewing federal cases on direct appeal, *see United States v. Walker*, 915 F.2d 480, 482 (9th Cir.1990), but our focus is different on direct review than in the context of a § 2254 proceeding. As the controlling statutes and the Supreme Court have pointed out on recent occasions, our *only* concern when reviewing the constitutionality of a state-court conviction is whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a). *See also Coleman v. Thompson*, 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("The [habeas] court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*.") (emphasis in original). A particular abuse of discretion by a state court may amount also to a violation of the Constitution, but not every state court abuse of discretion has the same effect.[7] Accordingly, to the extent that they conflict with this opinion, we overrule *Bland* and *Crandell v. Bunnell*, 144 F.3d 1213 (9th Cir.1998).

## C. The Constitutional Gap

■ As we said in *Brown v. Craven*, 424 F.2d 1166 (9th Cir.1970), "[w]e think . . . that to compel one charged with [a] grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever." *Id.* at 1170 (citing *Entsminger v. Iowa*, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967), and *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). Twelve years later, we quoted this same passage in *Hudson v. Rushen* and added to it the following: "Thus, the state trial court's summary denial of a defendant's motion for new counsel without further inquiry violated the Sixth

Amendment." *Hudson*, 686 F.2d at 829 (internal citations omitted). Accordingly, it is well established and clear that the Sixth Amendment requires on the record an appropriate inquiry into the grounds for such a motion, and that the matter be resolved on the merits before the case goes forward. *See Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir.1991). Given the commands of Sixth Amendment jurisprudence, a state trial court has no discretion to ignore an indigent defendant's timely motion to relieve an appointed attorney.

## D. Remedy

■ We now must determine the appropriate remedy for the trial court's failure appropriately to process Schell's motion. Schell argues that the state court's failure to address his motion requesting substitute counsel was prejudicial per se and requires that we grant his writ without any showing of harm. To support this argument, Schell relies on our prior decisions in *Bland* and *Crandell*. Those cases are distinguishable.

■ In *Bland*, the defendant wanted appointed counsel to replace his previously retained counsel. *See Bland*, 20 F.3d at 1474–75. The *Bland* court held that failure to allow the defendant to replace his retained counsel violated his qualified right to *choice of counsel*, which was prejudicial error per se. *See id.* at 1478–79. The qualified right of choice of counsel applies only to persons who can afford to retain counsel. *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) ("Petitioner does not, nor could it defensibly do so, assert that impecunious defendants have a Sixth Amendment right to choose their counsel. The Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable com-

---

7. We note in any event that the state court's failure to rule on Schell's motion did not involve the exercise of any discretion whatsoever. The deficiency here results from a failure to act at all.

plaint so long as they are adequately represented by attorneys appointed by the courts."); *United States v. Rewald*, 889 F.2d 836, 856 (9th Cir.1989) (recognizing that the right to choice of counsel is limited to defendants who can retain counsel); *United States v. Ray*, 731 F.2d 1361, 1365 (9th Cir.1984) ("This court has recognized that *individuals who can afford to retain counsel* have a qualified right to obtain counsel of their choice.") (emphasis added); *see also United States v. Graham*, 91 F.3d 213, 221 (D.C.Cir.1996) (" 'One of the express limitations upon the right to choose one's own attorney is that the criminal defendant be 'financially able' to retain counsel of his choice.' ") (quoting *United States v. Friedman*, 849 F.2d 1488, 1490 (D.C.Cir.1988)); *United States v. Mendoza–Salgado*, 964 F.2d 993, 1014 n. 12 (10th Cir.1992) ("A defendant's right to secure counsel of choice is cognizable only to the extent defendant can retain counsel with private funds."). In this case, Schell sought appointment of counsel to replace appointed counsel. There is no suggestion that Schell could or wanted to retain his own counsel. Consequently, the erroneous denial of the motion for substitute counsel did not implicate Schell's qualified right to counsel of his choice, and the per se prejudice rule from *Bland* is not applicable.

*Crandell* also is distinguishable. In *Crandell*, the defendant was improperly forced to choose between incompetent counsel and no counsel at all. *See Crandell*, 144 F.3d at 1214. He chose the latter and to represent himself. *Id.* at 1215. Under those unique circumstances, we concluded that no showing of prejudice was required because Crandall was improperly left with no counsel at all. *Id.* at 1216. The inherent prejudice in *Crandell* was therefore the denial altogether of the right to counsel, not the denial of a motion for substitute counsel. *See Strickland*, 466 U.S. at 692, 104 S.Ct. 2052 ("Actual or constructive denial of the assistance of

counsel altogether is legally presumed to result in prejudice.").

■■■ In this case, the issue is neither Schell's right to choice of counsel nor a denial of counsel. Instead, the basic question is simply whether the conflict between Schell and his attorney prevented effective assistance of counsel. *See Morris*, 461 U.S. at 13–14, 103 S.Ct. 1610 (holding that the Sixth Amendment requires only competent representation and does not guarantee a meaningful relationship between a defendant and counsel). It may be the case, for example, that because the conflict was of Schell's own making, or arose over decisions that are committed to the judgment of the attorney and not the client,[8] in fact he actually received what the Sixth Amendment required in the case of an indigent defendant, notwithstanding the State trial court's failure to inquire.

Thus, the ultimate constitutional question the federal courts must answer here is not whether the state trial court "abused its discretion" in not deciding Schell's motion, but whether this error actually violated Schell's constitutional rights in that the conflict between Schell and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment.

■■■ Schell's allegations in his petition to the district court were sufficient under 28 U.S.C. § 2254 to entitle him to an evidentiary hearing on his claims of a toxic conflict with his lawyer. In sum and substance, Schell says that a dispute with his public defender over the only evidence in the prosecution's case that could link him to the crime became hostile and resulted in the disintegration of communications both with him and with members of his family about her preparation of his defense.

---

8. *See Brookhart v. Janis*, 384 U.S. 1, 8, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) ("[A] lawyer may properly make a tactical determination of how to run a trial even in the face of his client's incomprehension or even explicit disapproval.").

Counsel allegedly told Schell that she would not waste government money on a fingerprint expert, and that he should not waste the court's time or money on a trial and should accept the plea bargain. If true, this explanation may have been tantamount to her telling him that she would neither investigate his case nor defend him unless he pleaded guilty. Nevertheless, Schell persisted, and counsel agreed to consult an expert. After she did, however, she did not share with the defendant the expert's letter purportedly containing the expert's unfavorable opinion, and she allegedly became hostile when he asked to see it. Based on her request to put the trial over until after her vacation and her offer to show him the letter at a later time, he then waived time; but when the day for trial arrived, she still did not show him the letter and allegedly became hostile with him yet again and would not discuss his case. It was at this point that he asked that a *Marsden* motion be made on his behalf. Although Schell's motion may have resulted in a delay of the trial, there is no legal excuse here for the trial court's failure to resolve the motion.

■ Evidentiary hearings are particularly appropriate when claims raise facts that occurred out of the courtroom and off the record. *See United States v. Chacon–Palomares*, 208 F.3d 1157, 1159 (9th Cir.2000); *Frazer v. United States*, 18 F.3d 778 (9th Cir.1994); *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990); *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir.1989). In fact, "[a]n evidentiary hearing on a habeas corpus petition is required whenever a petitioner's allegations, if proved, would entitle him to relief, and no state court trier of fact has, after a full and fair hearing, reliably found the relevant facts." *Turner v. Marshall*, 63 F.3d 807, 815 (9th Cir.1995) (internal quotation marks and citations omitted), *overruled on other grounds by Tolbert v. Page*, 182 F.3d 677 (9th Cir.1999) (en banc).

We have every confidence that an evidentiary hearing is an appropriate vehicle for developing the facts a court needs to decide whether this type of non-structural constitutional error was consequential, or not. *See Arizona v. Fulminante*, 499 U.S. 279, 306–07, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The type of hearing now required is similar to the contemporaneous hearing that both federal and state trial courts conduct all the time on pending motions to substitute because of an alleged irreconcilable conflict, and similar to the hearing we ordered in *Crandell*.

■ However, not every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights. *See Morris*, 461 U.S. at 13–14, 103 S.Ct. 1610 (holding that the Sixth Amendment does not guarantee a "meaningful relationship" between the defendant and his counsel). Here, because the state trial court failed to make an appropriate inquiry, the record does not reflect how far the relationship between Schell and his counsel had deteriorated, or whether Schell himself had sabotaged the relationship or failed to make reasonable efforts on his end to develop the relationship. *See Crandell*, 144 F.3d at 1217–18. In fact, *no* court, either state or federal, has ever adequately looked into the merits of the substance of Schell's serious allegations. And, because no court has examined Schell's claims, at this stage of the case we must take his allegations at face value. *See Bland*, 20 F.3d at 1474.

■ We therefore reverse the denial of the petition and remand this case to the district court with instructions to conduct an evidentiary hearing to determine (1) the nature and extent of the conflict between Schell and his attorney, and (2) whether that conflict deprived Schell of the representation to which he was entitled by the Sixth Amendment. In the event that the trial court determines that a serious conflict did exist that resulted in the constructive denial of assistance of counsel, no further showing of prejudice is required; and Schell's trial shall be presumed to have been unfair. *Strickland*, 466 U.S. at

**1028**

692, 104 S.Ct. 2052 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."). If the serious conflict did not rise to the level of a constructive denial of counsel, however, Schell would have to prove he was prejudiced by the conflict. *See id.* at 691–92, 104 S.Ct. 2052.

## III Ineffective Assistance of Counsel

 Schell requests also that we remand this case to the district court for an evidentiary hearing to determine whether his trial counsel was effective in connection with his substantive defense, and if not, whether the failure resulted in prejudice. This issue, of course, is at the heart of the nature of the alleged conflict between Schell and his public defender. As the Respondent's original reply brief accurately says, "Petitioner's sole complaint concerning his dissatisfaction and the nature of any conflict with counsel concerned the sufficiency of the fingerprint evidence and counsel's decision not to seek and/or to call as a witness a fingerprint expert." In this respect, it appears inevitable that the basis for this claim will be explored in the hearing we have already ordered. Nonetheless, it is conceivable that Schell could show that he received ineffective assistance of counsel unrelated to a serious conflict between Schell and his attorney. We note also that Schell attempted to discover the facts, develop the record, and explore this issue in state court in his appropriate request to the state appellate court for a remand for an evidentiary hearing, but his attempt was rebuffed. Presumably, the Respondent opposed Schell's request. Moreover, had his trial attorney not allegedly given him defective advice on what must have happened to his *Marsden* motion, he would have discovered the missing facts before his trial. Under these circumstances, we believe Schell diligently attempted to develop the record in state court, but was prevented from doing

so by the courts themselves, and possibly his public defender.

To reiterate, a defendant is entitled to an evidentiary hearing if "(1) he has alleged facts that, if proved, would entitle him to relief; and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." *Caro v. Calderon,* 165 F.3d 1223, 1226 (9th Cir.1999). We do note again that if Schell prevails on his claim that through no fault of his own the conflict resulted in a constitutionally deficient relationship, the closely related issues raised by his ineffective assistance of counsel claim become moot. Nevertheless, in the interest of judicial economy, we request the district court to decide the ineffective assistance claim irrespective of its determination on the substitution of counsel claim so as to avoid any possible need for yet another remand on further appeals.

 To establish a claim of ineffective assistance of counsel, Schell must prove (1) that his counsel's representation fell below an objective standard of reasonableness, and also (2) that such poor performance prejudiced the defense. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Schell argues that his counsel agreed to solicit the opinion of a fingerprint expert only after his repeated requests that she do so, and that when he asked to see the opinion from the expert, his attorney stated that the opinion was unfavorable but failed to show him the letter from the expert. Schell argues that his attorney failed to solicit the help of a fingerprint expert, and that in this case where the only evidence was one fingerprint, failure to do so could constitute ineffective assistance of counsel. We agree.[9] On the distinctive facts of this case, we believe that a failure to solicit the opinion of a fingerprint expert could have constituted ineffective assistance of counsel. The importance of this fingerprint

9. The state claims that to be able to make this claim, Schell must aver that the fingerprint was not his. A fair reading of Schell's papers, however, suggests that Schell *does* make

this claim. At the least, he does allege that the print was not sufficiently clear to identify him as the person who left it during the burglary.

evidence—the only evidence connecting Schell to the crime—was underscored in counsel's argument to the jury at the end of the case. Let us begin with Schell's attorney's argument:

[Defense Counsel]: And unless you can say, after you look at all the evidence and examine it critically, that you have an abiding [conviction] to a moral certainty that that is Mr. Schell's print and that he did the burglary, you must vote not guilty.

Now I want to take a few minutes and go over the evidence you have been given and on how you're going to analyze it in terms of the law. Basically what you have in this case—because it's not in dispute that somebody entered into [Husinger's] apartment. The issue here is identity.

And what the prosecution has given you is a partial print of one digit. And they're asking you to conclude that that print is Mr. Schell's.

And I ask you to look at that print, to actually look, and you can see it's just a partial print of the thumb. They're asking you to conclude that's the print of Mr. Schell.

What's the bases of that conclusion? Primarily it's the testimony of the third witness. But look at that testimony.

First of all, this individual tells you that there were more points of similarity than 10, but he stops at 10. What does that mean?

First of all, it seems to me if there were more, he would have told you what the more were, but he tells you, well, he stops at 10. We know that any individual fingerprint has 50 to a 150 characteristics. Out of that large array, he stops at 10; we know that.

I believe he finally did admit to one point of dissimilarity could be enough for no match. But he kept saying he possibly could explain it away. But the bottom line is the reality exists that one point of dissimilarity would make for no match.

And what is important about that in this case is you don't have a complete print. It's not in dispute that prints were taken from Mr. Schell to compare against this partial print exemplar. But what is of concern, and is very disturbing, is that this person who purports to be an expert is telling you he hasn't any doubt it's a match, although he stops at 10, and he knows that a portion of that print is missing, and that points of dissimilarity would tell him this is not a match.

And we come back to the concept of reasonable doubt. Not just one point of dissimilarity, but many points of dissimilarity in that missing portion of the print he did not have to examine. But that's not of concern for this person who works with L.A.P.D.

Just because he comes into court and he tells you I am certain this is a match, does not mean that you have to accept that. You have to look at the underlying basis for his conclusion.

To this argument, the prosecutor responded as one might expect, including with a standard rhetorical question aimed at the defense: "Oh yeah, well where's *your* expert?"

[Prosecutor]: Ladies and Gentlemen, thank you for your patience; it's almost over.

When I was listening to defense counsel, there was one simple phrase that you heard from the court that just kept pounding in my brain, and that was: statements by counsel are not evidence.

What I say is my interpretation of what I think the evidence shows.

What [Defense Counsel] says is what her interpretation of what the evidence—her advocacy role is, it is not evidence.

So, let's just look at one of the areas [Defense Counsel] addressed. She's talking about the expert in fingerprint comparison.

Now, ladies and gentlemen, fingerprints are an area where obviously some expertise, some specialized training, is required. That's why they have people trained to go out and compare them, analyze them, to do the things they do. I'm not an expert, [Defense Counsel] is not an expert, probably none of you are experts.

What we have had is an expert with a long history and long experience get up and testify and say there is no doubt that there is a match.

Now, the burden is on the prosecution to prove its case. And I believe the prosecution has clearly done that. But when the defense attacks these arguments, that's words, that's just puffery. What would have made the difference? The difference would have been had the defense called an expert who had gotten up on that stand and said to–

[Defense Counsel]: Your Honor, I'm objecting. That is improper argument, and that's an attempt to shift the burden. It's contravention to 260 and 261 in which the defense is relying on the state of the people's evidence.

The record does not clearly reflect, however, whether Schell's attorney in fact consulted a fingerprint expert and whether that expert gave a favorable report. Although Schell does not come right out and accuse his attorney of lying to him, his claims imply that this is the case. Without fully developed information, however, we are unable to determine whether Schell's attorney adequately prepared for trial and effectively represented Schell during that stage of the proceedings. We therefore remand this issue to the district court with instructions to include in the evidentiary hearing the closely related issue of whether Schell's trial counsel acted competently in this ·respect, and, if not, whether the deficiencies prejudiced Schell's trial. We respectfully request in the interest of bringing this litigation to a prompt conclusion that this determination be made even if the trial court should determine that the conflict of which Schell complains deprived him of his rights under the Sixth Amendment.

### CONCLUSION

For the reasons explained above, we reverse the denial of the petition and remand to the district court for an evidentiary hearing to determine answers to the questions identified in this opinion.

AFFIRMED IN PART; REVERSED IN PART and REMANDED.