■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM STEELE, True Name LANCE GREY, Appellant. [731 NYS2d 685] —Judgment, Supreme Court, Bronx County (Martin Marcus, J.), rendered March 20, 1995, convicting defendant, after a jury trial, of murder in the second degree and burglary in the first degree, and sentencing him, as a second violent felony offender, to concurrent terms of 25 years to life and 12½ to 25 years, respectively, unanimously affirmed.

The verdict was based on legally sufficient evidence and was not against the weight of the evidence. The People's case rested upon the theory that defendant had left his palmprint, made with the victim's blood, on a cardboard box near the victim's bedroom door as he left the scene of the crime. A palmprint matching defendant's was found on the box. However, in testing the box for additional, latent prints, the police chemist used a chemical which made it impossible to further determine whether the palmprint on the box was made of the victim's blood, or whether or not it was actually blood to begin with. This test also changed the color of the palmprint. The chemist testified that a test for blood would, in turn, have made it impossible to test for latent prints.

Defendant's principal argument is that the evidence does not establish his guilt beyond a reasonable doubt because, given the expert's inability to determine the age of the palmprint and the lack of evidence that it was made of the victim's blood, or anyone's blood for that matter, there are various reasonable explanations of how defendant, a local resident, might have touched the box and stained it with an unknown substance prior to its arrival in the victim's apartment. Although a defendant may be convicted, in appropriate cases, solely upon the presence of his prints at a crime scene (*People v Yancey*, 24 NY2d 864), defendant points to a line of cases standing for the proposition that a print of undetermined age on a movable object that would have been accessible to the public at some time prior to its acquisition by the crime victim cannot establish guilt beyond a reasonable doubt (*see, e.g.*, *Mikes v Borg*, 947 F2d 353; *Borum v United States*, 380 F2d 595).

Here, the inference is inescapable that the substance in which defendant's palmprint was impressed on the cardboard box was made from the victim's blood. The evidence established that there was blood all over the victim's bedroom and body, that the victim had been strangled as well as beaten by his assailant and that the cardboard box was positioned where the assailant logically would place his bloodied hand in order to exit the bedroom door, which was blocked by the victim's body. Lay witnesses are competent to identify blood from its appearance (*Greenfield v People*, 85 NY 75, 84; *People v Mathews*, 176 AD2d 1135), and all of the witnesses who viewed the palmprint on the box prior to the chemical test testified that it appeared that the palmprint was made from blood. Furthermore, the chemist testified that, based on its reaction with the chemical he applied, the palmprint must have contained a substantial amount of protein.

Accordingly, the evidence clearly established that defendant placed his palmprint on the box at the time of the murder, and not on some hypothetical occasion prior to the victim's acquisition of the box. The presence of the print "can be explained in a manner consistent with innocence only through far-fetched, unsupported speculation." (*Taylor v Stainer*, 31 F3d 907, 909-910; *accord*, *Schell v Witek*, 218 F3d 1017, 1022-1023.)

The sufficiency and weight of the evidence is not undermined by the fact that a print taken from one of the alleged murder weapons, the victim's ski, could not be matched to defendant. The expert's testimony was merely that a comparison between the ski print and defendant's print was "inconclusive" and since the expert could not rule out that defendant left the print on the ski, there was no conflicting print evidence.

Defendant's claim that the palmprint evidence should have been excluded as a sanction for the destruction of potential exculpatory evidence (*see, Brady v Maryland*, 373 US 83) resulting from the testing process selected by the police chemist is unpreserved and we decline to review it in the interest of justice. Were we to review this claim, we would find that the destruction of the blood evidence on the cardboard box by the chemical process of testing for latent prints was not done in bad faith (*see, Arizona v Youngblood*, 488 US 51). Since the blood analysis process would have destroyed crucial print identifying evidence, the choice of tests was a reasonable investigative strategy under all the circumstances. Furthermore, the exculpatory value of the evidence is purely speculative (*see, California v Trombetta*, 467 US 479).

Defendant received meaningful representation (*see, People v Benevento*, 91 NY2d 708, 713-714) and his trial counsel's failure to raise any objection to the destruction of the blood evidence did not constitute ineffective assistance. For the reasons stated above, such an objection would have been unavailing and its absence could not have caused any prejudice.

Defendant's argument as to the sufficiency of the Grand Jury evidence is foreclosed by CPL 210.30 (6), and there was no impairment of the integrity of the Grand Jury proceedings.

Defendant's motion to suppress the palmprints taken from defendant for comparison while he was under arrest for another crime was properly denied. As explained in the court's well-reasoned opinion (163 Misc 2d 1060), the palmprints were properly taken pursuant to CPL 160.10. Concur—Tom, J. P., Mazzarelli, Wallach, Buckley and Friedman, JJ.