**Jack Felon GRAY, Petitioner— Appellant,**

v.

**James GOMEZ, Director of Corrections Respondent Appellee.**

No. 01–57076.

D.C. No. CV–95–1913–HLH.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 8, 2003.

Decided Dec. 10, 2003.

Darlene M. Ricker, Attorney at Law, Malibu, CA, Jack Felon Gray, CSPLAC—California State Prison L.A. County, Lancaster, CA, Petitioner–Appellant.

Jeffrey B. Kahan, AGCA—Office of the California Attorney General (LA), Los Angeles, CA, for Respondent–Appellee.

Before FISHER and BYBEE, Circuit Judges, and MAHAN,* District Judge.

MEMORANDUM**

Jack Gray, a state prisoner, appeals the district court's denial of his habeas corpus

---

* The Honorable James C. Mahan, United States District Judge for the District of Nevada, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

petition filed pursuant to 28 U.S.C. § 2254. A jury convicted Gray of first degree murder and he was sentenced to life imprisonment without the possibility of parole.

Gray contends that the trial court violated his Sixth Amendment right to counsel in failing to grant his request for a new attorney to represent him for his motion for a new trial involving allegations of ineffective assistance of trial counsel. We disagree and affirm.

## I.

Gray was convicted of first degree murder for the killing of Gary Kuhns, a security guard at a freight yard in Paramount, California. On the night of the murder, Kuhns and a fellow security guard, Joseph Hensley, were on overnight duty at the yard. Both guards were seated in a panel truck when at approximately 4 a.m., the passenger window shattered and a large man wearing a ski mask shouted at them to get their hands up.

The attacker inserted the barrel of a pump shotgun through the broken window. Hensley testified that he saw, through the mask's openings, the gunman's eyes and a portion of his mouth. Fearful the attacker would shoot, Hensley fled the truck and ran toward the loading dock. A few steps from the truck, he heard the shotgun discharge. Several seconds later, he heard a second blast. Hensley climbed over the loading dock and ran to nearby homes for help.

A Los Angeles County sheriff's deputy responded to a call from Hensley and transported him back to the freight yard. The deputy found Kuhns' body, which had been shot, next to the panel truck. Nearby lay a spent shotgun shell casing and a Mossberg 12–gauge shotgun. Investigators traced the shotgun to a man who had loaned his identification to Jeff Gray, the petitioner's brother, in order to purchase the gun.

Jeff Gray was on parole when he acquired the shotgun but was arrested the next month and in custody at the time of the murder. After discovering his connection to the gun, the government successfully prosecuted him for possession of a firearm by a felon. Before sentencing, Jeff Gray agreed to cooperate with local authorities.

A Los Angeles County sheriff's deputy conducted two interviews with Jeff Gray. During a videotaped interview, Jeff Gray recounted a conversation he had in jail with his wife, who related to him that petitioner Jack Gray wanted to borrow his shotgun. Jeff Gray told his wife to let the petitioner have the gun. According to Jeff Gray, when he later learned of Kuhns' murder, he spoke to the petitioner, who confessed that he had shot a guard while burglarizing a freight yard.

Petitioner Jack Gray was later identified by Hensley during a lineup of six men, each of whom wore a ski mask and recited exclamations used by the murderer during the crime. At trial, Hensley again identified the petitioner upon hearing him speak.

A jury found Gray guilty of first degree murder. After the verdict, Gray informed the court that he wished to relieve his appointed counsel and that he planned to retain new counsel to present a motion for a new trial. He explained that because part of his motion would be based on a claim of ineffective assistance of counsel, presenting such a motion would present an inherent conflict for his trial counsel.

Pursuant to *People v. Marsden,* 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44, 49 (1970), the trial court inquired as to the basis for Gray's dissatisfaction. He articulated various deficiencies of trial counsel, including inadequate preparation and fail-

ure to introduce certain items into evidence. At the conclusion of the hearing, the court found that Gray's representation had been adequate and denied the *Marsden* motion without prejudice.

On the date of sentencing, a second *Marsden* hearing was held during which Gray reiterated his previous grounds for dissatisfaction with counsel and added numerous examples of counsel's alleged ineffectiveness. The court denied the motion, again finding that counsel's representation had been adequate.

Subsequently, Gray appealed to the California State Court of Appeal, which affirmed the trial court's judgment on September 29, 1989. The California Supreme Court also denied Gray's appeal on January 18, 1990. Having exhausted his state remedies, Gray filed a petition for writ of habeas corpus in federal district court. The petition was denied, and Gray timely appealed.

Gray filed a petition for writ of habeas corpus on March 27, 1995, which was prior to the effective date of the Anti–Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2253 (2003). Pre–AEDPA standards of review govern our consideration of habeas corpus petitions filed prior to AEDPA's effective date. *Mayfield v. Woodford,* 270 F.3d 915, 921–22 (9th Cir.2001); *see Lindh v. Murphy,* 521 U.S. 320, 326–27, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (holding that AEDPA is not applied retroactively to pending habeas petitions); *Jeffries v. Wood,* 114 F.3d 1484, 1494 (9th Cir.1997) (en banc).

Under the pre-AEDPA standards, we review de novo the district court's denial of a petition for habeas corpus. *Mayfield,* 270 F.3d at 922; *King v. Brown,* 8 F.3d 1403, 1408 (9th Cir.1993). In a pre-AEDPA case, the standard for granting habeas is whether the alleged errors had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

## II.

Gray argues that the district court should have granted his habeas corpus petition on the basis of the trial court's denial of his request for substitute counsel to represent him in a motion for a new trial. Gray's motion was premised on the alleged ineffectiveness of his trial attorney, who he argues could not properly present such a claim. The district court found that under the applicable law and circumstances, appointment of substitute counsel for Gray was not required under the Sixth Amendment.[1] We agree.

---

1. In *Jackson v. Ylst,* 921 F.2d 882, 887–88 (9th Cir.1990), we declined to adopt a rule requiring the automatic substitution of counsel whenever a new trial motion is premised on trial counsel's ineffectiveness because such a requirement would be barred under the anti-retroactivity proscription of *Teague v. Lane,* 489 U.S. 288, 299–300, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Teague* holds that habeas relief may be granted only on a rule "dictated" by precedent existing at the time the defendant's conviction became final," and not on a rule that "breaks new ground or imposes a new obligation on the States or the Federal Government." *Id.* at 301 (emphasis in original) (citations omitted). There are only two exceptions to this general rule of nonretroactivity. The first exception permits retroactivity if the rule places a class of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe. *Id.* at 307. The second exception is for "watershed rules of criminal procedure" that implicate the fundamental fairness and accuracy of the criminal proceeding. *Id.* at 311. In *Jackson,* the first exception did not apply because we were not concerned with Jackson's criminal conduct. *Jackson,* 921 F.2d at 888. The second exception was equally inapplicable because failure to adopt the rule proposed

To establish a Sixth Amendment violation, Gray must demonstrate that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). A defendant who establishes an actual conflict "need only show that some effect on counsel's handling of particular aspects of the trial was 'likely.'" *United States v. Miskinis,* 966 F.2d 1263, 1268 (9th Cir.1992) (citation omitted). A trial judge is required to order a substitution of counsel if, after a hearing, the defendant has shown that there is a breakdown in the attorney-client relationship or that "an actual conflict of interest existed." *Wood v. Georgia,* 450 U.S. 261, 273–74, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981).

In *Brown v. Craven,* 424 F.2d 1166, 1170 (9th Cir.1970), we held that to compel one charged with a grievous crime to undergo trial with the assistance of an attorney with whom he has become embroiled in an irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever. *Id.* at 1170. Gray contends that this parallels what was done to him. He argues that when the state court denied his request for substitute counsel, it violated his Sixth Amendment right to conflict-free counsel.

Gray relies on *United States v. Del Muro,* 87 F.3d 1078, 1080 (9th Cir.1996), arguing that his motion for a new trial based on ineffective assistance of counsel necessarily created a conflict that rendered his counsel ineffective to argue the motion, thereby entitling him to substitute counsel. *Del Muro,* however, is distinguishable.[2] In *Del Muro,* we found a Sixth Amendment violation because forcing trial counsel to argue his own ineffectiveness during an evidentiary hearing created an inherent conflict of interest. *Del Muro,* 87 F.3d at 1080. In *Del Muro,* we made the following observation:

> There was an actual, irreconcilable conflict between Del Muro and his trial counsel at the hearing on the motion for new trial. The interests of counsel were diametrically opposed to those of Del Muro. The trial court's determination that an evidentiary hearing was warranted heightened the conflict. When Del Muro's allegedly incompetent trial attorney was compelled to produce new evidence and examine witnesses to prove his services to the defendant were ineffective, he was burdened with a strong disincentive to engage in vigorous argument and examination, or to communicate candidly with his client. The conflict was not only actual, but likely to affect counsel's performance.

*Id.* (footnote omitted). As a reviewing court, we found it virtually impossible to determine what evidence would have been presented had substitute counsel been appointed or how the presentation of testimony might have been affected by conflicting interests. *Del Muro,* 87 F.3d at 1080. Under those circumstances, because Del Muro had shown a conflict of interest, we presumed prejudice. *Id.* at 1080–81.

Here, the circumstances do not warrant a presumption of prejudice. The trial court conducted two hearings inquiring as to the reasons for Gray's dissatisfaction and found no real basis upon which to seek further evidentiary development or argument on his claims of ineffective assistance

by Jackson would "not seriously diminish the likelihood of an accurate conviction." *Id.*

**2.** In *Del Muro,* we declined to decide whether a defendant would be entitled to substitute counsel when a court determines that no evidentiary hearing is required on the new trial motion. 87 F.3d at 1081 n. 4.

of counsel. Accordingly, the trial court could resolve Gray's *Marsden* motions without requiring counsel to engage in the level of argument and examination that the *Del Muro* court found problematic.

Presuming prejudice and requiring a substitution of counsel under the circumstances of this case, therefore, would effectively require trial courts to do so whenever a new trial motion is premised on trial counsel's alleged ineffectiveness. We decline to adopt such a requirement, because it would constitute a "new rule" within the meaning of *Teague v. Lane,* 489 U.S. 288, 299–300, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and would not fall within either of the two *Teague* exceptions. *See supra* note 1. First, we are not concerned with Gray's alleged criminal conduct. Second, the proposed requirement "has none of the primacy and centrality of the rule adopted in *Gideon,*"[3] and failure to adopt such a requirement "will not seriously diminish the likelihood of an accurate conviction." *See Jackson,* 921 F.2d at 888 (citation omitted); *cf. Summerlin v. Stewart,* 341 F.3d 1082, 1102 (9th Cir.2003) (en banc) (concluding that the holding in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), was "substantive" for *Teague* purposes because it "effected a redefinition of Arizona capital murder law").

Having found no inherent conflict of interest in this case, we now focus on Gray's allegation of conflict stemming from his litany of claims against trial counsel.

### III.

In *Marsden,* the California Supreme Court set forth the state's procedure for seeking the substitution of appointed counsel. *Marsden,* 84 Cal.Rptr. 156, 465 P.2d

at 49. The Sixth Amendment requires an appropriate inquiry into the grounds for a *Marsden* motion. *Schell v. Witek,* 218 F.3d 1017, 1025 (9th Cir.2000) (citation omitted). Failure to conduct such an inquiry amounts to the constructive denial of counsel and, thus, per se error. *Id.* at 1027. As previously noted, criminal defendants are not guaranteed a right to substitute counsel simply because they seek to challenge the competence of their representation. *See Jackson,* 921 F.2d at 882 (citation omitted).

Gray argues that the *Teague* bar announced in *Jackson* should not apply here because this case involved numerous claims against his attorney. From this premise, Gray contends that a conflict necessarily existed, one which required the trial court to conduct further inquiry.

However, a review of the post-trial proceedings shows that the court adequately protected Gray's constitutional rights. The judge held two hearings, providing Gray with the opportunity to articulate his reasons for dissatisfaction with counsel and the basis for his proposed new trial motion.

The court noted that Gray's attorney appeared sympathetic to his client's arguments even though he did not concede ineffectiveness. When asked to respond to Gray's first attack, counsel replied, "I would cooperate with any new counsel and provide any declarations in writing that are required to the new attorney."

When the court denied the first *Marsden* motion, counsel "interjected that [Gray] should be advised to have any new counsel pursue the sentencing and appeal proceedings." When Gray renewed his

---

**3.** In *Gideon v. Wainwright,* 372 U.S. 335, 339–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Supreme Court held that an indigent state prisoner is entitled to representation by appointed counsel at every critical stage of the proceedings against him.

*Marsden* motion, counsel stated he (counsel) had spoken to three of the witnesses [Gray] referred to, but otherwise demurred: "I really don't want to get into a situation where I am going against my client.... I have full records of everything that was done. All these items can be addressed in an appeal."

The court observed that Gray seemed entirely comfortable with counsel, even after the rejection of the *Marsden* motion. After gaining limited co-counsel status, Gray asked the court, "Can I have Mark go through these motions also since I am co-counsel?" Given Gray's familiarity with and reliance on his attorney, and counsel's manifest allegiance to him, the court found no support for the allegation that any conflict existed between them.

Claiming that his dispute with counsel amounted to "toxic conflict," Gray attempts to refute the district court's findings. To support this position, he points to the fact that counsel refused to present his theory of the defense. However, a defendant has no right to an attorney who shares his view of trial strategy. *See United States v. Mejia–Mesa,* 153 F.3d 925, 931 (9th Cir.1998). In fact, a defendant has no right to a meaningful relationship with counsel—just an ability to communicate with him. *LaGrand v. Stewart,* 133 F.3d 1253, 1276–77 (9th Cir.1998) (citing *Morris v. Slappy,* 461 U.S. 1, 13–14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)). Thus, Gray's claim of ineffectiveness is unsubstantiated.

Here, the evidence against Gray was extremely strong and included an eyewitness identification, his link to the murder weapon and his confession to his brother. As such, the petitioner has failed to make out a prima facie case of ineffectiveness in

---

* This panel unanimously finds this case suitable for decision without oral argument. See

light of the evidence of guilt. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The trial court, having found that Gray's attorney provided adequate representation, did not violate his Sixth Amendment rights in denying his *Marsden* motion.

**AFFIRMED.**