Glynn Edward SCOTT, Petitioner—
Appellant,

v.

E.K. MCDANIEL, Warden,
Respondent—Appellee.

No. 04–17516.

D.C. No. CV–97–00213–RAM.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 11, 2005.*

Decided Aug. 29, 2005.

Glynn Burroughs Cartledge, Law Of-
fices of Glynn Burroughs Cartledge, Reno,
NV, for Petitioner-Appellant.

Heidi E. Nagel, AGNV—Office of the
Nevada Attorney General (Las Vegas),
Las Vegas, NV, for Respondent-Appellee.

Before PREGERSON, KLEINFELD,
and HAWKINS, Circuit Judges.

MEMORANDUM**

Glynn Edward Scott, a Nevada state
prisoner, appeals the district court's denial
of his 28 U.S.C. § 2254 habeas petition
after an evidentiary hearing on remand
from this court. Before his state trial on
three charges of attempted murder with
the use of a deadly weapon, Scott sought
to have his court appointed attorney, Mark
Blaskey, removed as counsel. Scott al-
leged that he and Blaskey were involved in
an irreconcilable conflict and could not
communicate. The trial court denied the
motion for substitution and Scott was ulti-
mately convicted on the lesser-included of-
fenses of battery with the use of a deadly
weapon. Scott's habeas petition chal-
lenges his conviction on the ground that a
conflict between him and Blaskey resulted
in the constructive denial of Scott's Sixth
Amendment right to counsel. We have
jurisdiction pursuant to 28 U.S.C. § 2253,
and we affirm.

* This panel unanimously finds this case suit-
able for decision without oral argument. *See*
Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publi-
cation and may not be cited to or by the
courts of this circuit except as provided by
Ninth Circuit Rule 36–3.

To prevail, Scott must establish that an actual conflict existed between him and Blaskey that was sufficiently disruptive to amount to a constructive denial of his Sixth Amendment right to counsel. *Schell v. Witek,* 218 F.3d 1017, 1026 (9th Cir. 2000). If the relationship between Scott and Public Defender Blaskey deteriorated to such an extent that it resulted either in a total lack of communication or in a state of irreconcilable conflict, this may—depending upon the seriousness of the conflict—amount to a constructive denial of Scott's Sixth Amendment rights. *See id.*

The record does not support a finding that Scott and Blaskey were so embroiled in a conflict that the two were not able to communicate or that Blaskey was unable to effectively represent Scott. While Scott vehemently argues that he and Blaskey suffered from an irreconcilable conflict, his specific testimony suggests that there was nevertheless an exchange of information between Scott and his appointed public defender. Scott testified that he was able (1) to relate to Blaskey the events surrounding the crime charged, at least up to a point where he said he encountered an unknown knife-wielding man;[1] (2) to discuss witnesses with Blaskey and/or his investigator; (3) to send Blaskey's investigator to interview certain witnesses; (4) to discuss trial strategy, including Scott's claim of self-defense; (5) to discuss whether it was prudent for Scott to testify given the lack of corroborating evidence, Scott's prior felony conviction for assault with a deadly weapon, and possible juror bias; and (6) to discuss whether to remove a particular juror who knew Scott.[2]

Nor is it true that Blaskey was unable to advise his client, Scott, regarding his right to testify and whether it was prudent to do so. At the evidentiary hearing, Scott gave a detailed account of his conversation with Blaskey. According to Scott, during his trial, he and Blaskey discussed the self-defense strategy and the problems with Scott testifying.[3] Scott said that Blaskey told him that if he testified his prior felony conviction for battery with a deadly weapon would come in and the jury would not believe he acted in self-defense. Blaskey advised Scott that "seven or eight" witnesses would testify that the bar fight started after Scott entered the bar and stabbed someone. Blaskey also pointed out that the prosecution would use Scott's testimony and words against him. When Scott acknowledged that while his testimony would contradict the prosecution's witnesses, his testimony would be "standing alone because there was nothing to corroborate it," Blaskey agreed, saying that "all it would be is contradictory testimony, and the jury won't believe you with a prior." All of this testimony suggests that the two had a dialogue regarding the evidence and theory of self-defense, i.e., that they were actually able to communicate despite arguing over strategy and factual disputes.[4]

---

1. Scott also testified to his version of the events during the preliminary hearing. Blaskey had and reviewed a copy of the transcript of that hearing.

2. Scott points to Blaskey's testimony (1) that the two "butted heads a lot," and (2) that Blaskey "tried" to communicate with Scott. To Scott, Blaskey's testimony supports a finding that the two suffered a complete communication breakdown. However, this ignores Blaskey's further testimony that he and Scott discussed Scott's self-defense theory, potential

witnesses, and that his investigator met with these witnesses and that Blaskey spoke with some of them before they testified.

3. This testimony also undercuts Scott's assertion that he did not speak to Blaskey during the trial. ER 827.

4. This conclusion is borne out further in Scott's testimony regarding his decision not to testify. According to Scott, he "decided not to testify," because there was no corroborating testimony to support his account, be-

Because Scott has not established that any conflict between him and Blaskey adversely affected the adequacy of representation, Scott must demonstrate prejudice to obtain relief. *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This he cannot do. Although the jury convicted Scott of battery with a deadly weapon, Blaskey was able to secure an acquittal on the substantially more serious attempted murder charges. Given the weight of the evidence against Scott (in particular the statements from three witnesses regarding Scott's stated intent to go home, get a knife, and then return to kill everyone at the bar), this result strongly suggests that Scott was not prejudiced by a communication problem with his defense counsel.

**AFFIRMED.**

cause Blaskey had told him the prosecutor would twist his words and that the jury would not believe him given his prior felony conviction, and because Blaskey had failed to impeach the prosecution witnesses. More importantly, Scott stated that his "principal" reason for not testifying was "Blaskey's ad-

vice." It is unclear why, if his relationship with Blaskey was so deteriorated, he would have placed such a high value on Blaskey's advice as to give up his right to testify.

