# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES PORTER III,
      *Petitioner-Appellant,*

v.

DERRICK L. OLLISON,
      *Respondent-Appellee.*

No. 07-55305

D.C. No.
CV 06-01118-R

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Manuel Real, District Judge, Presiding

Argued November 6, 2009
Submitted July 19, 2010
Pasadena, California

Filed July 29, 2010
Amended August 26, 2010

Before: Ronald M. Gould and Carlos T. Bea, Circuit Judges,
and William T. Hart,* District Judge.

Opinion by Judge Hart

---

*The Honorable William T. Hart, District Judge for the Northern District of Illinois, sitting by designation.

12847

**COUNSEL**

Arthur H. Weed, Esq., Santa Barbara, California, for the petitioner.

David Delgado-Rucci, Office of the California Attorney General, San Diego, California, Kevin Vienna, Supervising Deputy Attorney General, Office of the California Attorney General, San Diego, California, for the respondent.

**ORDER**

Appellant's petition for rehearing is granted in part and denied in part.

The opinion dated July 29, 2010 is hereby amended as follows:

1. On page 10888, fn5, line 3 change <California Supreme habeas> to <California Supreme Court habeas>.

2. On page 10891, line 4 from bottom, change <When the California Supreme Court denies a habeas petition, that round of habeas review is> to <Until January 1, 2003, when the California Supreme Court denied a habeas petition, that round of habeas review was>.

3. On page 10891, last line change <819.> to <819; Cal. R. of Ct. 8.532(b)(2)(C) (2003).>

4. On page 10894, replace the last 4 lines with <second round of habeas review. 295 days later was Thursday October 12, 2005, by which time the federal habeas petition was on file.>

No further petitions for rehearing or rehearing in banc will be entertained by the court.

---

**OPINION**

HART, District Judge:

James Porter III was found guilty of being a felon in possession of a firearm and sentenced by a California court to a term of incarceration of 25 years to life. In his *pro se* federal habeas corpus petition, Porter contends that there was insufficient evidence to support his conviction and that his trial counsel was ineffective for failing to object to certain evidence and a jury instruction. The merits of Porter's habeas petition are not before this court. The only question is whether, on preliminary review, the federal habeas petition was properly dismissed as untimely without responsive briefing and an evidentiary hearing. The principal issue is the possible application of equitable tolling based on misconduct by

an attorney who resigned from the State Bar of California (the "Bar") while facing disciplinary proceedings for running a habeas corpus "writ mill." On preliminary review, it cannot be conclusively determined that the federal petition was untimely. For the reasons that follow, we vacate the district court order denying Porter's habeas petition as untimely and remand on the ground further factual development will be necessary before a conclusion can be made with respect to the timeliness of Porter's petition.

## I.  BACKGROUND

Because the case was dismissed on preliminary review, respondent has not answered the petition. The full state court pleadings and record were not before the district court. Any preliminary determination is limited to Porter's allegations and exhibits, as well as any state court dockets or pleadings that have been located (including on the Internet) and for which it is proper to take judicial notice. *See Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir. 2002); *Abeyta v. Giurbino*, 607 F. Supp. 2d 1123, 1127 n.5 (C.D. Cal. 2009).[1]

On December 15, 1999, Porter was found guilty of being a felon in possession of a firearm. On March 16, 2000, he was sentenced to 25 years to life under California's Three Strikes Law. On December 18, 2000, the California Court of Appeal affirmed the conviction and sentence. On March 14, 2001, the California Supreme Court denied review.

---

[1]Judicial notice is taken of the court dockets in the state court proceedings. Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Judicial notice is also taken of the second round habeas corpus petition, including attachments, that was filed in the California Supreme Court. *Id.* This document was not considered by the district court. The attachments include the Superior Court's order denying Porter's second round habeas petition and the Court of Appeal's decision on direct appeal. Judicial notice is also taken of California disciplinary proceedings. Fed. R. Evid. 201(b); *White v. Martel*, 601 F.3d 882, 885 (9th Cir. 2010).

The district court took notice of California Supreme Court and California Court of Appeal records for a first round of habeas proceedings. The district court and the parties on appeal, though, did not note that a *pro se* habeas petition was first filed in the state trial court on August 27, 2001[2] and denied on September 5, 2001. *See In re James Porter III*, No. SWHSS4984 (Super. Ct. Cal. San Bernardino County).[3] On September 26, 2001, Porter filed a *pro se* habeas petition in the California Court of Appeal. On October 1, 2001, the petition was summarily denied. *See* http://appellatecases. courtinfo.ca.gov/search/case/dockets.cfm?dist=42&doc_id= 663436&doc_no=E030333 (accessed Nov. 19, 2009). On November 28, 2001, Porter filed a *pro se* habeas petition in the California Supreme Court which was denied on April 17, 2002. *See* http://appellatecases.courtinfo.ca.gov/search/case/ mainCaseScreen.cfm?dist=0&doc_id=1834111&doc_no= S102432 (accessed Nov. 19, 2009).

On April 24, 2003, Porter initiated a second round of habeas proceedings by again filing a habeas petition in the San Bernardino Superior Court. He was represented by attorney Richard Dangler. On August 22, 2003, the petition was denied. On December 1, 2003, a habeas petition was filed in the California Court of Appeal. Porter was represented by Dangler. On December 9, 2003, the petition was denied. On February 9, 2005, Porter filed a *pro se* habeas petition in the California Supreme Court. On December 21, 2005, it was denied.

On October 11, 2006, Porter's *pro se* federal habeas corpus petition was docketed. He indicates that it was placed for

---

[2]In a motion filed in the district court, Porter states that he signed the petition on August 22, 2001. It will be assumed he provided the petition for mailing on August 22.

[3]The docket for this case may be accessed at http://www.sbcounty.gov/courts/flash.asp (accessed Nov. 19, 2009) by entering a search for the case number or petitioner's name.

mailing on September 24, 2006. Applying the "mailbox" rule, *Ramirez v. Yates*, 571 F.3d 993, 996 n.1 (9th Cir. 2009); *Jenkins v. Johnson*, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003), *overruled on other grounds*, *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the federal petition is deemed to have been filed on September 24, 2006.

A magistrate judge reviewed Porter's petition and recommended dismissing it as untimely. The magistrate judge calculated that the time for filing a federal petition had already expired before Porter began his second round of state habeas petitions in April 2003. The magistrate judge held that equitable tolling could not apply because there is no right to an attorney in habeas corpus proceedings and Porter had not shown that he had acted with diligence. In ruling on objections to the report, the district judge noted that the record indicated only a single request by Porter for return of his files from attorney Dangler, which did not constitute diligently pursuing his rights. The court held that, because the time for a federal appeal had already expired in April 2003, any delays in returning the file could not have affected Porter's ability to file a timely petition. Additionally, the district judge rejected actual innocence contentions that are not raised on appeal. A judgment denying the petition was entered on January 8, 2007. Porter thereafter sought reconsideration, which was denied, and timely appealed.

Viewed in a light favorable to petitioner, the facts are as follows:[4] In November 2001, shortly before or after Porter filed his first round habeas petition in the California Supreme Court, Porter (through his girlfriend Keena Love) retained Dangler to represent him in state and/or federal habeas corpus proceedings. Porter turned over to Dangler virtually all of his

---

[4]The facts alleged in the petition and facts supported by other documentary submissions of the petitioner are viewed in a light favorable to petitioner. *See Evans v. Chavis*, 546 U.S. 189, 201 (2006).

legal documents, including his copies of trial transcripts. Porter retained copies of some writs or draft writs.

When, in April 2002, the California Supreme Court issued its order denying the *pro se* habeas petition, Dangler was representing Porter. At this point in time, one round of state habeas corpus petitions had been completed and more than ten months remained to file a timely federal habeas corpus petition. Dangler, however, did not thereafter file a timely federal petition. Instead, more than a year later in April 2003, Dangler initiated a second round of habeas petitions in the California Superior Court. Dangler informed Porter that this second round state petition was necessary in order to exhaust issues that had not been previously raised. However, the Superior Court petition did not raise any issues that had not already been raised on direct appeal or in the prior *pro se* petitions. This filing by Dangler was consistent with practices of Dangler designed to run up the bills of clients — practices that eventually resulted in disbarment proceedings being initiated against him based on the charge of running a "writ mill."

One of the documents submitted by Porter in the district court is the decision of the Client Security Fund Commission of the State Bar of California, which ruled that Dangler was required to return the entire $7,250 fee that had been paid to him for representing Porter in the state habeas proceedings. It was found that the fee paid for representing Porter was lost due to the "dishonest conduct" of Dangler. The Fund Commission's decision includes findings, based on the findings in *In re White*, 121 Cal. App. 4th 1453, 18 Cal. Rptr. 3d 444 (2004), that Dangler filed more than 50 habeas corpus petitions for which he did not monitor the timeliness of filings, ensure that frivolous claims were not filed, or limit petitions to claims not already raised on direct appeal. Dangler hired law students to draft the petitions, paid them minimal amounts, and did not actually review the petitions before filing them in court. It was found that Dangler would convince clients to pay him to file pleadings he knew or should have

known had little chance of success. Dangler's "entire operation was set up to dupe inmates and their vulnerable families into paying him for basically worthless petitions prepared by non-attorneys."

Dangler contended before the Fund Commission that his failure to act on Porter's behalf from April 2002 through March 2003 was caused by his poor health, but that he had another attorney working in his office at the time. The Fund Commission found, however, that this attorney, Roman Rector, had no experience in habeas corpus proceedings and lacked the knowledge or experience to supervise persons working on habeas corpus petitions.

In June 2004, while disciplinary proceedings were pending against him, Dangler submitted his resignation from the Bar, which the California Supreme Court accepted in August 2004. In September 2004, Porter learned that Dangler had resigned from the Bar. In a letter, Rector offered to take over the case, but for an additional fee, and using Dangler to assist him in a non-attorney role. Porter expressed interest in retaining Rector. Based on a letter Porter received from Rector on October 10, 2004, Porter believed Rector was representing him. Rector informed Porter that he was still able to file a petition in the California Supreme Court and that he was working on a draft. Thereafter, Porter repeatedly attempted to contact Rector, but without success. Porter ultimately filed a second *pro se* petition in the California Supreme Court.[5] The Fund Commission found that Rector and Dangler had a "questionable" financial arrangement and that, as of 2004, Rector did not have the experience to handle habeas petitions.[6]

---

[5]In the district court, Porter submitted two September 2004 letters from Rector. The facts regarding further contact are taken from representations Porter made, in his second round California Supreme Court habeas petition, explaining delays in filing that petition.

[6]At oral argument, counsel for Porter represented that disciplinary proceedings are pending against Rector. State Bar records show that, by stipu-

The Fund Commission rejected Dangler's excuse that the initial delays in filing pleadings for Porter were due to Dangler's health, not Dangler's dishonest conduct. It also rejected Dangler's contention that Porter had caused delays that precluded Dangler, prior to relinquishing his license, from filing a habeas petition in the California Supreme Court.

In the district court, Porter also provided declarations from his wife (Michelle Cunningham) and mother (Deborah Porter). Deborah Porter states that she was in contact with Dangler from 2001 to 2005 and she was told that a writ was being pursued. It was not until 2004 or 2005 that she learned Dangler was no longer licensed to practice. After deciding she could not afford Rector's additional fee, Deborah Porter requested that the file be returned to her son. In their declarations, both Deborah Porter and Cunningham state the "transcript" was not received by Cunningham until June or July 2006 and that she had to obtain permission to send the transcript to Porter in prison. After permission was obtained, the transcript was sent to Porter in October 2006. One of Porter's contentions is that he could not prepare the federal habeas corpus petition until Dangler or Rector returned his case file.

## II. STANDARD OF REVIEW

The timeliness of the federal habeas petition, including whether the limitation period should be tolled, is reviewed *de*

---

lation dated October 26, 2009, Rector was suspended for 90 days, an 18-month suspension has been stayed, and he is subject to two years of probation. *See* http://members.calbar.ca.gov/courtDocs/06-O-11681-2.pdf (accessed June 16, 2010). The suspension was served from February 26, 2010 to May 26, 2010. *See* http://members.calbar.ca.gov./search/ member_detail.aspx?x=212244 (accessed June 16, 2010). Most of the stipulated misconduct relates to representation of habeas petitioners formerly represented by Dangler. Rector stipulated to findings that he failed to respond to a client's inquiries; failed to review a case file before representing a client; and accepted compensation from someone other than clients without the informed consent of each particular client.

*novo* because there are no findings of fact. *Townsend v. Knowles*, 562 F.3d 1200, 1204 (9th Cir.), *cert. denied*, 130 S. Ct. 193 (2009) (quoting *Harris v. Carter*, 515 F.3d 1051, 1054 (9th Cir. 2008)); *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir.), *cert. denied*, 130 S. Ct. 244 (2009); *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). The district court may dismiss a habeas petition only when "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rules Governing § 2254 Cases R. 4; *Boyd v. Thompson*, 147 F.3d 1124, 1128 (9th Cir. 1998).

Prisoner *pro se* pleadings are given the benefit of liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed pro se is to be liberally construed"). However, in construing *pro se* petitions liberally, the petitioner is not entitled to the benefit of every conceivable doubt; the court is obligated to draw only reasonable factual inferences in the petitioner's favor. *McKinney v. De Bord*, 507 F.2d 501, 504 (9th Cir. 1974).

## III.   ANALYSIS

**[1]** Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1)(A), a federal petition for writ of habeas corpus ordinarily must be filed within one year after the state court judgment becomes final by the conclusion of direct review or the expiration of the time to seek direct review. The time during which a properly filed application for state post-conviction or collateral review (including California habeas proceedings) is pending does not count toward this one-year period. *Id.* § 2244(d)(2). Various rules regarding the computation of the § 2244(d)(1) limitation period and § 2244(d)(2) statutory tolling apply.

The period between when direct review becomes final and the filing of a state habeas petition is not tolled; tolling begins when the state habeas petition is filed. *Raspberry v. Garcia*,

448 F.3d 1150, 1153 n.1 (9th Cir. 2006) (quoting *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999)). In determining when a *pro se* state or federal petition is filed, the "mailbox" rule applies. A petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing. *Ramirez*, 571 F.3d at 996 n.1; *Jenkins*, 330 F.3d at 1149 n.2. As to California habeas proceedings, collateral review is considered to be pending during the interim between a writ being denied at one court level and a new petition being filed at the next higher court level as long as the petition at the next level is filed within a reasonable period of time. *Carey v. Saffold*, 536 U.S. 214, 222-25 (2002); *Evans,* 546 U.S. at 192-93. If the time to file a federal petition has not already expired when a second round of properly filed California habeas petitions begins, the second round of petitions will also toll the § 2244(d)(1) period. *See Dils v. Small*, 260 F.3d 984, 986 (9th Cir. 2001). For tolling to be applied based on a second round, the petition cannot be untimely or an improper successive petition. *See Townsend*, 562 F.3d at 1205. The time between the completion of a first round and the beginning of a second round is not tolled. *Delhomme v. Ramirez*, 340 F.3d 817, 820 (9th Cir. 2003).

In determining the running of the limitations period in this case, certain finality rules apply. When, on direct appeal, review is sought in the state's highest court but no petition for *certiorari* to the United States Supreme Court is filed, direct review is considered to be final when the *certiorari* petition would have been due, which is 90 days after the decision of the state's highest court. *Bowen v. Roe*, 188 F.3d 1157 (9th Cir. 1999); *Townsend*, 562 F.3d at 1204. Until January 1, 2003, when the California Supreme Court denied a habeas petition, that round of habeas review was considered to be final 30 days thereafter. *Raspberry*, 448 F.3d at 1152; *Delhomme*, 340 F.3d at 819; Cal. R. of Ct. 8.532(b)(2)(C) (2003).

**[2]** Recently, the United States Supreme Court held that equitable tolling may apply to the limitation period of

§ 2244(d)(1). *Holland v. Florida*, 130 S. Ct. ___, 2010 WL 2346549 *9-12 (June 14, 2010). This Circuit had previously so held. *See Ramirez*, 571 F.3d at 997; *Waldron-Ramsey*, 556 F.3d at 1011 n.2; *Calderon v. United States Dist. Ct. for C.D. of Cal. (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998) (en banc); *Calderon v. United States Dist. Ct. for C.D. of Cal. (Beeler)*, 128 F.3d 1283 (9th Cir. 1997), *overruled on other grounds*, *Kelly*, *supra*. As respondent concedes, all other circuits that have reached the issue had also so held. While recognizing Ninth Circuit law was to the contrary, respondent preserved the argument that equitable tolling can never apply to the § 2244(d)(1) limitation period. *Holland* conclusively resolves that it may apply.

**[3]** "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way,' and prevented timely filing." *Holland*, 2010 WL 2346549 at *12 (quoting *Pace*, 544 U.S. at 418). The petitioner must show that "the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time." *Ramirez*, 571 F.3d at 997 (internal quotation marks & citations omitted). "[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Spitsyn*, 345 F.3d at 799 (quoting *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)).

**[4]** Attorney negligence, including a miscalculation of a filing deadline, is not a sufficient basis for applying equitable tolling to the § 2244(d)(1) limitation period. *Holland*, 2010 WL 2346549 at *13-14; *Randle v. Crawford*, 604 F.3d 1047, 1058 (9th Cir. 2010); *Spitsyn*, 345 F.3d at 800; *Miranda*, 292 F.3d at 1068; *Frye v. Hickman*, 273 F.3d 1144 (9th Cir. 2001). However, attorney misconduct that is sufficiently egregious to meet the extraordinary misconduct standard can be a basis for applying equitable tolling. *Spitsyn*, 345 F.3d at 801. In *Spitsyn*, the attorney was retained a full year in advance of

the deadline, but completely failed to prepare or file a petition even though the attorney was repeatedly contacted by both the client and the client's mother, and a grievance was filed with the state bar association complaining about the lack of response. Also, despite a letter terminating the representation and requesting the file, the file was not turned over until two months after the expiration of the filing deadline. This conduct was held to be sufficiently egregious. *Id.* at 798, 801. It was still necessary that the petitioner act with reasonable diligence. *Id.* at 802.

In *Holland*, 2010 WL 2346549 at *14, the Supreme Court held that the facts before the court, which required further development on remand, were sufficient to "suggest" far more than "garden variety" negligence or "excusable neglect."

> To be sure, Collins failed to file Holland's petition on time and appears to have been unaware of the date on which the limitations period expired—two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

The court also indicated the extraordinary nature of the attorney's conduct was supported by the conduct being violations of canons of professional responsibility. *Id.*

**[5]** Ninety days after the March 14, 2001 California Supreme Court *Porter* decision on direct review was Tuesday, June 12, 2001. When Porter mailed his first *pro se* habeas petition on August 22, 2001,[7] the running of the § 2244(d)(1) period was tolled. As of August 22, 70 days of the limitation period had run, leaving 295 days to file a federal habeas petition. There is no contention that there were unreasonable delays in filing the remaining petitions of the first round. The first round was final 30 days after the California Supreme Court's denial, which was Friday, May 17, 2002. If there was no further tolling, Porter's deadline for filing a federal habeas corpus petition was 295 days later, Monday, March 10, 2003. Even assuming the next round of state petitions were properly filed and would otherwise toll the limitation period, that round did not begin until an attorney-filed petition was filed on Thursday, April 24, 2003. Therefore, Porter needs equitable tolling to reach the second round of state habeas petitions.

Assuming Porter is entitled to equitable tolling for the entire time period that he was represented by Dangler and believed he was represented by Dangler's associate, Rector, such tolling could last until February 5, 2005. At that point, Porter's second round of state petitions was still pending so the limitations period would have continued to be tolled. On December 21, 2005, the California Supreme Court denied the second round of habeas review. 295 days later was Thursday October 12, 2005, by which time the federal habeas petition was on file.

If Porter is entitled to equitable tolling of the § 2244(d)(1) limitation period from March 10, 2002 through April 24, 2003 and also equitable tolling excusing any unreasonable delays during his second round of state habeas petitions, it is unnecessary for there to be further tolling (based on Dangler's and Rector's continued failure to return Porter's files) for any time

---

[7]The calculation relied on by the parties does not take this filing into account.

period between the California Supreme Court's 2005 denial of habeas relief and the filing of the federal habeas petition.

**[6]** On remand, further development of the facts may ultimately show that Porter is or is not entitled to equitable tolling because of lack of diligence or because Dangler's egregious conduct did not prevent Porter from filing a timely federal petition. Construing Porter's *pro se* habeas petition liberally, and on the facts supported by the submissions presently before the court, however, it cannot be conclusively determined that Porter is not entitled to equitable tolling.

Other instances of Dangler's misconduct are noted: *Jones v. Henry*, 2006 WL 2382152 *6-7 (E.D. Cal. Aug. 17, 2006), *mag. j. report adopted*, 2006 WL 3039566 (E.D. Cal. Oct. 25, 2006), *reconsideration denied*, 2007 WL 512422 (E.D. Cal. Feb 12, 2007) (applying equitable tolling based on deficient representation of Jones in state habeas proceedings by Dangler and another separate attorney, both of whom were eventually disbarred (or resigned) based on that type of conduct); *Patrick v. Hubbard*, 2008 WL 489516 (E.D. Cal. Feb. 20, 2008), *mag. j. report adopted*, 2008 WL 756137 (E.D. Cal. March 20, 2008) (applying equitable tolling based on representation by Dangler and Rector).

**[7]** It has been held that a habeas petitioner represented by an attorney who was disbarred (or resigned the bar) for the same type of conduct as in the petitioner's case and required to return his fee was engaged in egregious conduct that constitutes extraordinary circumstances beyond attorney negligence. *See Spitsyn*, 345 F.3d at 798 (favorably cited in *Holland*, 2010 WL 2346549 at *13) (state bar association subsequently reprimanded the attorney for deficiencies in representing Spitsyn). *See also Holland*, 2010 WL 2346549 at *14 (noting attorney's conduct violated ethical rules). *Compare also Ford v. Hubbard*, 330 F.3d 1086, 1106 (9th Cir. 2003), *vacated on other grounds sub nom.*, *Pliler v. Ford*, 542 U.S. 225 (2004) (citing *Beeler*, 128 F.3d at 1288) (favorably cited in *Holland*, 2010

WL 2346549 at *13)) (attorney moving out of state and leaving behind unusable work product for replacement counsel is an example of an attorney's failure to protect the client's interest that constitutes egregious conduct justifying equitable tolling); *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) (favorably cited in *Holland*, 2010 WL 2346549 at *13; *Spitsyn*, 345 F.3d at 801) ("extraordinary circumstances" standard satisfied by attorney's egregious conduct in failing to follow client's specific direction to file a 28 U.S.C. § 2255 motion and failure to perform any research on the matter).

The district court dismissed this case based on the conclusion that Porter did not act diligently. However, Porter provided facts that may support that Dangler's egregious representation prevented him from acting in a timely manner. On preliminary review, it cannot be conclusively determined that Porter will be unable to show that he acted with sufficient diligence.

In *Ford*, the district court did not allow the petitioner to amend the petition or expand his declaration, nor had it held an evidentiary hearing. Because equitable tolling is highly fact specific, this court declined to rule on equitable tolling and instead remanded the case for further factual development. 330 F.3d at 1107. In *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (per curiam), this court remanded the case for further consideration of equitable tolling because it could not be determined that there were "no circumstances consistent with petitioner's petition and declaration under which he would be entitled to a finding of . . . equitable tolling." *See also*, *Holland*, 2010 WL 2346549 at *14 (quoting *Gonzalez v. Crobsy*, 545 U.S. 524, 540 (2005) (Stevens, J., dissenting)).

In *Spitsyn*, this court noted that the existing record did not "clearly answer" whether Spitsyn acted with reasonable diligence and provided no explanation of why Spitsyn waited five months after his file being returned before filing a habeas

petition. Nevertheless, the case was remanded to the district court to develop the pertinent facts. 345 F.3d at 802. It was also held that, on the limited record, it could not be assumed that Spitsyn was dilatory for not filing a petition on his own or retaining a new attorney during an extended period of time that his counsel failed to respond sufficiently to requests from Spitsyn and Spitsyn's mother. *Id.* at 801.[8]

It is contended that Porter did not act diligently because the filing of the February 2005 California Supreme Court petition shows that he had the ability to file a habeas petition without the return of his files and without the assistance of Dangler. However, depending on further factual development, it would be possible to find, as in *Holland* and *Spitsyn*, that Porter acted diligently because he, his mother, and others continually contacted Dangler and Rector until it became apparent in February 2005 that neither would be providing further representation. In this case's present posture, it cannot be conclusively determined that Porter would not be able to show that the effects of Dangler's dishonest and bad faith representation carried over from when he was first retained in November 2001 until February 2005.

**[8]** The judgment of the district court will be vacated and this case remanded to complete the preliminary review of the merits of Porter's federal habeas corpus petition. Any timeliness determination by the district court will require factual findings.

---

[8]The district court distinguished the present case from *Spitsyn* on the basis that the record in the present case only supports that Deborah Porter made one request for the return of the file. On the present record, though, it cannot be concluded that Porter did not make any such requests. In any event, contrary to the district court's assumption as to the facts in *Spitsyn*, that case involved one request for return of Spitsyn's file. *See id.* at 798. There were numerous other contacts with the *Spitsyn* attorney, but the record in the present case also supports that Porter, his mother, and others had numerous communications with Dangler and Rector during the pertinent time periods. Moreover, Dangler's misconduct is not limited to failing to return Porter's files.

VACATED and REMANDED.