**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DOUGLAS DANIEL CLARK,

*Petitioner-Appellant*,

v.

RONALD BROOMFIELD, Acting
Warden, California State Prison at San
Quentin,

*Respondent-Appellee*.

No. 21-99008

D.C. No. 2:92-cv-
06567-SB

OPINION

Appeal from the United States District Court
for the Central District of California
Stanley Blumenfeld, Jr., District Judge, Presiding

Argued and Submitted September 19, 2023
San Francisco, California

Filed October 10, 2023

Before: Sidney R. Thomas, Mark J. Bennett, and Lawrence
VanDyke, Circuit Judges.

Opinion by Judge Sidney R. Thomas

# SUMMARY[*]

## Habeas Corpus/Death Penalty

The panel affirmed the district court's denial of Douglas Clark's 28 U.S.C. § 2254 habeas corpus petition challenging his California conviction and capital sentence for six counts of first-degree murder.

The panel held that Clark's pre-AEDPA October 1992 *pro se* filing seeking appointment of counsel was not an "actual application" that sought "adjudication" on the merits, and that AEDPA applied to the habeas petition filed by appointed counsel in April 1997.

The panel held that the California Supreme Court's decision that Clark's July 1982 pre-trial *Faretta* request to represent himself was equivocal was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

The panel held that the California Supreme Court's decision that Clark's August 1982 *Faretta* request was untimely was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. The panel held that the district court also properly held that the purported August *Faretta* demand was equivocal.

The panel held that the California Supreme Court's opinion holding that the trial court's revocation of Clark's *pro per* status during trial did not violate *Faretta* was not

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. The panel wrote that the state court's decision to consider Clark's threat to "stand mute" before the jury in light of the record as a whole was not an unreasonable application of *Faretta*, which permits the termination of self-representation when a defendant deliberately engages in serious and obstructionist misconduct.

The panel held that the district court properly concluded that the California Supreme Court's opinion holding that Clark's *Marsden* rights were not violated was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Under California law, a "*Marsden* motion" is typically based on a claim that the appointed counsel's representation has in some significant measure fallen below the level required by the Sixth Amendment. The panel wrote that Clark's assertion that an irreconcilable conflict existed with his lead counsel and that the trial court was required to conduct an evidentiary hearing to decide whether the conflict rose to a Sixth Amendment violation is foreclosed by *Carter v. Davis*, 946 F.3d 489 (9th Cir. 2019). The panel noted that Clark asserted only that his conflict with lead counsel "guaranteed an inadequate defense presentation," but neither raised a claim of ineffective assistance nor identified a single act of ineffectiveness. The panel explained that (1) Clark's request for a federal evidentiary hearing is precluded by *Cullen v. Pinholster*, 563 U.S. 170 (2011); (2) the request is also precluded by 28 U.S.C. § 2254(e) because Clark failed to develop any additional facts at trial and solely raised the claim on appeal; (3) Clark did not allege facts that, if proven true, would entitle him to relief; and (4) because the Supreme Court has never recognized a Sixth Amendment claim based

on an irreconcilable conflict in the absence of alleging ineffectiveness, a hearing would be futile.

## COUNSEL

Jack G. Cairl (argued), Law Offices of Jack G. Cairl, Los Angeles, California; Michael S. Magnuson (argued), Law Offices of Michael S. Magnuson, Whittier, California; for Petitioner-Appellant.

Nathan Guttman (argued) and Xiomara Costello, Deputy Attorneys General; Dana Muhammad Ali, Supervising Deputy Attorney General; James W. Bilderback II, Senior Assistant Attorney General; Lance E. Winters, Chief Assistant Attorney General; Rob M. Bonta, California Attorney General; California Attorney General's Office, Los Angeles, California, for Respondent-Appellee.

## OPINION

S.R. THOMAS, Circuit Judge:

Douglas Clark appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition challenging his California conviction and capital sentence for six counts of first-degree murder. On appeal, he contends that his rights under *Faretta v. California*, 422 U.S. 806 (1975), and his right to substitute counsel under *People v. Marsden*, 465 P.2d 44 (Cal. 1970), were violated.

The district court had jurisdiction under 28 U.S.C. § 2241. We have jurisdiction pursuant to 28 U.S.C. §§ 1291

and 2253(a). We review a district court's denial of a habeas petition de novo. *See Martinez v. Cate*, 903 F.3d 982, 991 (9th Cir. 2018). We affirm.

## I

Clark was convicted in 1982 of the first-degree murders of Cynthia Chandler, Gina Marano, Karen Jones, Exxie Wilson, Marnette Comer, and Jane Doe 18. He was also convicted of one count of mutilation of human remains and one count of attempted murder and mayhem as to Charlene Andermann. The jury found true a multiple murder special circumstance allegation and sentenced Clark to death. On July 30, 1992, the California Supreme Court reversed Clark's conviction for attempted murder and mayhem and affirmed Clark's murder convictions and death sentence. *People v. Clark*, 833 P.2d 561 (Cal. 1992).

The facts underlying the six murders, and the investigations of them, are detailed in the California Supreme Court's decision in *Clark*, 833 P.2d at 570–78. Therefore, we shall focus on the legal arguments that Clark presents in his federal habeas appeal.

On direct appeal before the California Supreme Court, Clark claimed that the trial court violated his right of self-representation and right to substitute counsel. The California Supreme Court denied those claims on the merits. Clark subsequently filed numerous habeas petitions in the California Supreme Court. The California Supreme Court denied the claims on procedural grounds and on the merits.

On October 23, 1992, Clark filed a *pro se* document in federal district court entitled "Writ of Habeas Corpus, from a State Capital Trial and Appellate Process." Clark requested appointment of counsel to investigate potential

habeas claims, some of which he listed. At the end of the filing, Clark did not make a request for habeas relief, but only sought appointment of counsel. He signed the 1992 filing, but did not do so under penalty of perjury. The district court docketed the filing as a request for counsel and stay of execution.

The court subsequently appointed two attorneys to represent Clark and ordered *nunc pro tunc* that their appointment was effective as of September 29, 1993. When counsel filed the habeas petition on April 23, 1997, setting forth twenty-seven claims for relief, they did not purport to amend a prior filing.

The district court then issued an order staying the case to permit Clark to exhaust state remedies. After the California Supreme Court summarily denied Clark's petitions in 2003, Clark's attorneys filed the operative amended federal petition on June 22, 2004, which asserted twenty-three claims for relief.

The district court then ordered the parties to brief the applicability of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to the habeas petition. Following briefing, the court issued an order determining that AEDPA applied and set a briefing schedule for merits briefing.

After merits review, the district court upheld the California Supreme Court's decision as reasonable within the meaning of 28 U.S.C. § 2254(d). The district court concluded the state-court decision was objectively reasonable in its denial of Clark's claims as to (1) the denial of his pretrial requests for self-representation, (2) the revocation of *Faretta* status during trial, and (3) the denial of his request for substitute counsel pursuant to *Marsden*.

The district court issued a certificate of appealability as to Clark's claims of *Faretta* and *Marsden* errors.

## II

## A

AEDPA applies to federal habeas petitions that were not pending prior to April 24, 1996. An application for federal habeas relief that was pending before AEDPA's effective date is not subject to AEDPA's limitations. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *partially overruled on other grounds*, *Gonzalez v. Arizona*, 677 F.3d 383, 390 (9th Cir. 2012).

After *Lindh*, the Supreme Court clarified that filings that are not an "actual application" seeking an "adjudication on the merits of the petitioner's claims" do not constitute a pending habeas petition subject to pre-AEDPA standards. *Woodford v. Garceau*, 538 U.S. 202, 207–08, 210 n.1 (2003). *Garceau* held that pre-application filings, such as a request for appointment of counsel or a motion for stay of execution, do not constitute an "actual application" that seeks an "adjudication" of the claims "on the *merits*" are subject to AEDPA. *Id.*

To determine what constitutes "an actual application for habeas relief" within the meaning of *Garceau*, 538 U.S. at 208, district courts may look to Rule 2 of the Rules Governing Section 2254 Cases, which sets forth criteria that the form of a habeas application must satisfy. Pursuant to Rule 2(c), a § 2254 petition must:

> (1) specify all the grounds for relief available to the petitioner;

(2) state the facts supporting each ground;

(3) state the relief requested;

(4) be printed, typewritten, or legibly handwritten; and

(5) be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242.

Rules Governing Section 2254 Cases in the United States District Courts (effective Feb. 1, 1997, as amended to Jan. 5, 2023).

A "failure to [sign and] verify the petition is a defect that . . . the district court may, if it sees fit, disregard," and "[s]ummary dismissal is appropriate only where the allegations in the petition are vague [or] conclusory or palpably incredible, or patently frivolous or false." *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990) (internal quotation marks and citations omitted).

In addition, "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see Wacht v. Cardwell*, 604 F.2d 1245, 1246–47 & n.2 (9th Cir. 1979) (describing the "specificity requirement" and recognizing that "[b]ald assertions and conclusory allegations" are insufficient to state a federal habeas claim).

*Pro se* habeas petitions are construed more liberally than counseled petitions, *see, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam); *Peterson v. Lampert*, 319 F.3d 1153, 1159 (9th Cir. 2003) (en banc), but the petition must still allege sufficient facts to state a cognizable claim under 28 U.S.C. § 2254, *see Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010) (noting that despite the "liberal

construction" afforded pro se pleadings, a pro se petitioner "is not entitled to the benefit of every conceivable doubt").

Here, as we have discussed, Clark's initial filing sought appointment of counsel to investigate potential claims and specifically disclaimed that his listing of potential issues for counsel to investigate was complete, saying it would be "silly" to do so. Clark did not "state the facts supporting each ground." *See Rules Governing Section 2254 Cases*; *see also James*, 24 F.3d at 26. Except for requesting appointment of counsel, Clark did not seek further relief. In addition, Clark did not sign the document under penalty of perjury or verify it. The district court docketed the filing as a request for counsel and stay of execution.

Thus, pursuant to *Garceau*, the October 1992 filing did not constitute an "actual application" that sought "adjudication" of the claims "on the merits." Rather, like *Garceau*, the relief sought was appointment of counsel and stay of execution.

Appointed counsel subsequently filed a habeas petition on April 23, 1997 setting forth twenty-seven claims for relief. The petition was not styled as an amended complaint or amended habeas petition.

Therefore, the district court correctly concluded that the prior filing by Clark was not an "actual application" that sought "adjudication" on the merits and that AEDPA applied to Clark's operative habeas petition.

B

Under AEDPA, a federal court may grant habeas relief only when the state-court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

United States," 28 U.S.C. § 2254(d)(1), or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

A state-court decision is contrary to clearly established federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). A state court's decision is an "unreasonable application" of federal law if it "identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (internal quotations and citation omitted). An unreasonable application of clearly established federal law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks and citation omitted).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. Given a Supreme Court holding in one context, circuit law cannot "bridge the gap" to reach a new context, *Glebe v. Frost*, 574 U.S. 21, 24 (2014), even as a "logical next step," *White*, 572 U.S. at 427. But we may "look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

In applying these standards on habeas review, we look through unexplained state-court decisions and review the "last reasoned decision" by the state court—here, the California Supreme Court's decision on direct appeal. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). A summary denial is an adjudication on the merits and entitled to deference. *See Harrington v. Richter*, 562 U.S. 86, 99 (2011); *Ochoa v. Davis*, 50 F.4th 865, 888 (9th Cir. 2022). Thus, the presumption that the unexplained state-court decision adopted the same reasoning as the lower-court decision can be rebutted by a showing that the unexplained affirmance relied—or most likely relied—on different grounds, "such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### III

The district court correctly concluded that the California Supreme Court's determination that Clark's *Faretta* rights were not violated was not contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

Under *Faretta*, a criminal defendant has a Sixth Amendment right to represent himself if he "knowingly and intelligently" waives his right to counsel. *Faretta*, 422 U.S. at 835. To knowingly and voluntarily waive the right to counsel and assert the right to self-representation, a defendant's request must be timely. *See Marshall v. Taylor*, 395 F.3d 1058, 1060–61 (9th Cir. 2005).

The *Faretta* request must also be unequivocal. *See Faretta*, 422 U.S. at 835. "If [a defendant] equivocates, he is presumed to have requested the assistance of counsel."

*Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989). A defendant's expression of a preference for counsel over representing himself may suggest that a request is equivocal. *See Stenson v. Lambert*, 504 F.3d 873, 884 (9th Cir. 2007) (holding that a petitioner's request for self-representation was equivocal where his "requests for self-representation were concessions that he really did not want to represent himself, but that he felt the court and [defense counsel] were forcing him to do so"). "*Faretta* does not require a trial judge to permit 'hybrid' representation." *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984); *see United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994) (finding no abuse of discretion where the district court denied a petitioner's self-representation requests that "were always accompanied by his insistence that the court appoint 'advisory' or 'standby' counsel").

Emotional or impulsive requests for self-representation are also considered to be equivocal. *See Hernandez*, 203 F.3d at 622 n.11 (explaining that an "emotional outburst in response to [a] judge's ruling" is equivocal); *Jackson v. Ylst*, 921 F.2d 882, 888–89 (9th Cir. 1990) (holding that a "request for self-representation that is 'a momentary caprice or the result of thinking out loud,'" such as an "impulsive response to the trial court's denial of [a defendant's] request for substitute counsel," is an equivocal request). In assessing whether a request was unequivocal, courts should consider the "whole record," *Walker v. Loggins*, 608 F.2d 731, 734 (9th Cir. 1979), and must "indulge in every reasonable presumption against waiver" of counsel, *Brewer v. Williams*, 430 U.S. 387, 404 (1977).

*Faretta* also made it clear that a constitutional "right of self-representation is not a license to abuse the dignity of the courtroom," and therefore, "the trial judge may terminate

self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." 422 U.S. at 834 n.46; *see McKaskle*, 465 U.S. at 173 (explaining that the right of self-representation is contingent upon a defendant being "able and willing to abide by rules of procedure and courtroom protocol").

## A

The California Supreme Court's decision holding that Clark's pre-trial *Faretta* request in July 1982 was equivocal was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

At the July 26, 1982 hearing, Clark became upset when the trial court denied his counsel's discovery motions. In response, Clark purported to dismiss his lead counsel, saying "I'm thoroughly capable of handling this case." Clark did not purport to dismiss the other counsel appointed to represent him, nor did he unequivocally demand self-representation.

Citing *Faretta*, the California Supreme Court held that Clark "did not unequivocally assert his right to self-representation" and "never expressed the desire to discharge both his appointed attorneys and to proceed pro se." *Clark*, 833 P.2d at 587 (internal quotation marks and citation omitted).

This holding was objectively reasonable within the meaning of § 2254(d).

First, the record indicates that the remarks were part of an emotional outburst by Clark in response to the partial loss of the discovery motion. *See Hernandez*, 203 F.3d at 622

n.11 (explaining that an "emotional outburst in response to [a] judge's ruling" is equivocal).

Second, Clark "never expressed his desire to discharge *both* his appointed attorneys." *Clark*, 833 P.2d at 587. By attempting to dismiss one attorney and not the other, Clark effectively sought hybrid representation. Indeed, in considering the whole record throughout the proceedings, *Walker*, 608 F.2d at 734, Clark asked to represent himself with the second attorney as co-counsel.

Accordingly, the California Supreme Court did not unreasonably conclude that Clark's July 26 statements did not clearly and unequivocally convey a request for self-representation because neither *Faretta* nor any other Supreme Court case law has addressed a situation where the defendant sought to dismiss one of multiple attorneys. *See McKaskle*, 465 U.S. at 183 ("*Faretta* does not require a trial judge to permit 'hybrid' representation . . . ."); *White*, 572 U.S. at 427 (explaining that "relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question" (internal quotation marks and citation omitted)).

## B

The California Supreme Court's decision that Clark's *Faretta* request in August 1982 was untimely was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

When Clark made his purported August *Faretta* demand, the case had a "firm" setting for trial that day. The record

supports the California Supreme Court's conclusion that the request was made, in effect, "on the eve of trial." *Clark*, 833 P.2d at 588. The trial was postponed briefly to resolve motions, but was considered "trailing," meaning that it could commence at any time.

Although *Faretta* established a timing element, there is no Supreme Court case "directly" establishing when a request is timely. *Marshall*, 395 F.3d at 1060. "The only Supreme Court decision to discuss the timeliness of a request to proceed pro se is the *Faretta* decision itself." *Burton*, 816 F.3d at 1141 (quoting *Moore v. Calderon*, 108 F.3d 261, 2654 (9th Cir. 1997). As we held in *Marshall*, "[n]o Supreme Court case has directly addressed the timing of a request for self-representation" and the Supreme Court has not delineated the "precise contours" of *Faretta*'s timeliness requirement. 395 F.3d at 1060–61.

AEDPA requires preexisting Supreme Court authority that "squarely addresses the issue" at hand and provides a "clear answer" to it. *Wright*, 552 U.S. at 126. An "indirect[]" ruling is insufficient. *Marshall*, 395 F.3d at 1060; *see Carter v. Davis*, 946 F.3d 489, 509 (9th Cir. 2019) ("AEDPA requires more than pointing to implicit holdings or dicta; it requires that the law be clearly established."). And there is no other Supreme Court case directly addressing the timing element of a *Faretta* request.

"In the absence of clear Supreme Court precedent defining when a *Faretta* request becomes untimely," a California state court "[i]s free to determine that [issue] under California's *Windham* rule." *Marshall*, 395 F.3d at 1062 (*citing People v. Windham*, 560 P.2d 1187 (Cal. 1977)). Because the Supreme Court has not held that the actual start date of a trial is the lynchpin for the analysis, or

"squarely addressed" whether and in what circumstance the prospect of a continuance affects the timing of a *Faretta* request, the California Supreme Court's decision not to tether the analysis to the actual start date of the trial was not unreasonable within the meaning of § 2254(d). *Wright*, 552 U.S. at 125.

The district court also properly held that the purported August *Faretta* demand was, in fact, equivocal. The record supports this conclusion. Clark again only sought to discharge one of his two attorneys and declared himself "satisfied" with the other attorney. He sought co-counsel status with his remaining attorney. Clark then referred to his lead attorney as either his ex-counsel or current counsel, "however the court decides," but referred to the other attorney as "fully qualified" and "fully competent" and stated that he had the "utmost faith in her." Thus, the record supports the district court's conclusion that the purported August *Faretta* assertion was equivocal.

In sum, the California Supreme Court's decision that the August request did not violate *Faretta* was not an objectively unreasonable application of *Faretta*, and was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

## IV

The district court properly concluded that the California Supreme Court's opinion holding that revoking Clark's *pro per* status during trial did not violate *Faretta* was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

At various times during the trial, Clark expressed his dissatisfaction with his lead counsel and attempted to re-assert his rights under *Faretta*, although in an equivocal manner, requesting that his other attorney remain as his "co-counsel." Clark was ordered removed from the courtroom after one outburst concerning his lawyer.

On October 13, Clark renewed his request for self-representation. The trial court advised him, "Since the time you've come into this court, I've indicated to you that you can go pro per, if you make a knowing[], intelligent waiver, as required by *Faretta*; that upon your doing that, you will receive no co-counsel, no assistance of counsel of any kind." Shortly thereafter, Clark stated, "I'm pro per at this time. The attorneys are dismissed."

Before granting Clark's *Faretta* motion, the trial court warned Clark that it would not allow him to abuse the privilege and would take the privilege away if he abused it. Additionally, the trial judge advised Clark of his constitutional rights; of the fact that if granted permission to proceed *in pro per*, he was giving up his right to be represented by a lawyer; and of his responsibilities as his own counsel.

The court specifically emphasized the warning about misconduct, stating:

> This is the one I want you to hear. Hear it loud and clear:
> "I understand the right to act in pro per is not a license to abuse the dignity of the court. I understand that the court may terminate my right to self-representation in the event that I engage in serious misconduct and obstruct

> the conduct and progress of the trial. I understand that in the event that happens, I will have to be represented by a lawyer, who will then take over the case at whatever stage it may be in."

> Do you understand that?

Clark twice affirmed that he understood.

Clark also signed a document acknowledging that, among other things, the court might terminate his right to self-representation in the event he engaged in serious misconduct and obstructed the conduct and progress of the trial. The judge then appointed his two attorneys as standby counsel, to sit in the courtroom and observe, but not to assist Clark. The court then again warned Clark, "If you abuse the process of the court, the minute the court feels that you have abused its process, your pro per privileges will be revoked and [your attorneys] will step back in[.]" Clark said that he understood. After the court found Clark's waiver of counsel to be knowing and intelligent, Clark said he had "no desire" to be his own attorney but he was "forced to."

From October 13, 1982 until November 1, 1982, Clark represented himself at trial and cross-examined 26 witnesses. On November 1, 1982, the trial court denied Clark's motions for appointment of a law clerk and to recuse the district attorney's office as "frivolous." Clark became upset. The judge then ordered the jury back into the courtroom and asked Clark to proceed with his examination. Clark, in front of the jury, then stated that he "stands mute throughout the rest of the trial." The trial court excused the jury and determined Clark had renounced his *pro per* status "[o]n the grounds that [Clark] decided to stand mute this

morning." The trial was continued until the next day. When it resumed on November 2, 1982, Clark agreed to defend himself rather than stand mute, and the trial court granted his motion to reinstate his *pro per* status and privileges. Clark then resumed his cross-examination.

From November 2, 1982 until December 6, 1982, Clark continued to represent himself at trial. However, after a series of outbursts and questioning that the trial court found improper, and after accusing the judge of various acts of misconduct, the trial court revoked his *pro per* status.

On appeal to this Court, Clark challenges the temporary revocation of his *pro per* status on November 1 in light of his "stand mute" declaration.

The California Supreme Court upheld the trial court's November 1, 1982 revocation of Clark's self-representation after Clark threatened to "stand mute" in front of the jury. The court held that Clark's conduct during the proceedings was "manipulative, obstructive and abusive," *id.* at 597; *see id*. at 638 (Kennard, J. dissenting) (referring to Clark as "an obstreperous, manipulative defendant" and the trial as a "judge's nightmare") and that Clark sought to create "as much disruption as possible," *id.* at 599 (majority opinion).

In generally addressing Clark's claims of trial-court error, the California Supreme Court  reasoned that "[a]ny dispassionate reading of this record" reveals that Clark "was playing games with the court on [the *Faretta*] issue." *Id.* at 586 (citation omitted); *see id.* at 599 ("[*Faretta*] held generally that a defendant may represent himself.  It did not establish a game in which defendant can engage in a series of machinations, with one misstep by the court resulting in reversal of an otherwise fair trial."). In support of this conclusion, the court underscored that Clark wrote a letter

during the proceedings in which he "boasted that he had 'gone "Pro per" at least 3 times' and had the 'case so fraught with controversial Judge's rulings it will be an appeals court NIGHTMARE, should it ever get so far.'" *Id.* at 581 n.3. The court held that Clark had "attempted to manufacture reversible error," *id.* at 586 and explained that Clark's "actions presented the court with a 'judgment call' under combat conditions upon which we may, and must, give deference to the trial court," *id.* at 600.

The California Supreme Court held that the trial court "justifiably viewed [Clark's] statement, or threat, that he would 'stand mute' not as a conscious decision to simply force the prosecution to its proof, but as part of a deliberate course of conduct designed to cause as much disruption as possible." *Id.* at 599. Accordingly, the court held that the trial court properly temporarily revoked Clark's *pro per* status until he chose to resume representing himself. *Id.* at 598–99 (internal citation omitted).

The California Supreme Court's conclusion that Clark's *Faretta* right was not violated was not unreasonable, and the record supports its determination that Clark engaged in a "deliberate course of conduct designed to create as much disruption as possible." *Clark*, 833 P.2d at 599.

Clark had threatened to "stand mute" as a tactic before and had instructed his attorneys to "stand mute" as a protest. When this tactic failed, Clark readily abandoned it. The morning after the revocation, Clark apologized, said he had changed his mind, and asked for reinstatement of his self-representation. The state court did not unreasonably determine that if Clark had genuinely wanted to "stand mute," he would have done so whether he was self-represented or not. Rather, after a cooling-off period, Clark

abandoned his stand-mute stance, asked for self-representation, and affirmatively defended himself.

On this record, the California Supreme Court's holding that Clark's stand-mute stance and other tactics were disingenuous was not unreasonable. *See id.* at 599–600 (holding that *Faretta* "did not establish a game in which a defendant can engage in a series of machinations, with one misstep by the court resulting in a reversal of an otherwise fair trial," or "a charade in which a defendant can continually manipulate the proceedings in the hope of eventually injecting reversible error into the case no matter how the court rules"); *Faretta*, 522 U.S. at 834 n.46; *McKaskle*, 465 U.S. at 173.

The state court's decision to consider Clark's stand-mute statement in light of the record as a whole was not an unreasonable application of *Faretta*, which permits the termination of self-representation when a defendant "deliberately engages in serious and obstructionist misconduct." 522 U.S. at 834 n.46.

In sum, the district court properly concluded that the California Supreme Court decision was not an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

V

The district court properly concluded that the California Supreme Court's opinion holding that Clark's *Marsden* rights were not violated was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

The Sixth Amendment guarantees a criminal defendant effective representation by counsel. *See Strickland v.*

*Washington*, 466 U.S. 668, 686 (1984). However, a defendant is not entitled to an appointed attorney of his choice, *see Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989), nor is he entitled to a "meaningful relationship" with counsel, *Morris v. Slappy*, 461 U.S. 1, 13–14 (1983).

Under California law, a motion for the appointment of substitute counsel, typically based on a claim "that appointed counsel's representation has in some significant measure fallen below the level required by the Sixth Amendment," *Schell v. Witek*, 218 F.3d 1017, 1021 (9th Cir. 2000) (en banc), is called a "*Marsden* motion." The "ultimate constitutional question" upon review in federal court "is not whether the trial court 'abused its discretion,'" but whether the denial of a *Marsden* motion "actually violated [the petitioner's] constitutional rights" because the conflict "bec[a]me so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Id.* at 1026.

A defendant is "entitled to substitute counsel if an 'irreconcilable conflict' between a defendant and his counsel prevents counsel from rendering effective assistance." *Michaels v. Davis*, 51 F.4th 904, 938 (9th Cir. 2022) (quoting *Schell*, 218 F.3d at 1025). A defendant is not entitled to substitution of counsel, however, because of his own refusal to cooperate with counsel due to a "dislike or distrust" of counsel, *Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc), or based on a conflict of his "own making," *Schell*, 218 F.3d at 1026.

"An irreconcilable conflict" claim has been recognized "only where there is a complete breakdown in

communication between the attorney and client, and the breakdown prevents effective assistance of counsel." *Stenson*, 504 F.3d at 886. "Disagreements over strategic[] or tactical decisions do not rise to [the] level of a complete breakdown in communication." *Carter*, 946 F.3d at 507–08 (quoting *Stenson*, 504 F.3d at 886). Indeed, "a lawyer may properly make a tactical determination of how to run a trial even in the face of his client's incomprehension or even explicit disapproval." *Schell*, 218 F.3d at 1026 n.8 (quoting *Brookhart v. Janis*, 384 U.S. 1, 8 (1966)).

"To determine whether a conflict rises to the level of 'irreconcilable,'" this Court "looks to three factors: 1) the extent of the conflict; 2) the adequacy of the inquiry by the trial court; and 3) the timeliness of the motion for substitution of counsel." *Stenson*, 504 F.3d at 886 (citing *Moore*, 159 F.3d at 1158–59). A trial court's inquiry into counsel's performance on a motion to substitute counsel should amount to "such necessary inquiry as might ease the defendant's dissatisfaction, distrust, and concern." *Id.* (quoting *United States v. Garcia,* 924 F.2d 925, 926 (9th Cir. 1991)). It should also provide a "sufficient basis for reaching an informed decision" as to whether new counsel should be appointed. *Id.* (quoting *United States v. McClendon,* 782 F.2d 785, 789 (9th Cir.1986)). The Supreme Court "has never held that an irreconcilable conflict with one's attorney constitutes a per se denial of the right to effective counsel." *Carter*, 946 F.3d at 508.

The California Supreme Court held that Clark's September 20, 1982 "diatribes" about his lead counsel did not constitute a *Marsden* motion to discharge and substitute counsel. *Clark*, 833 P.2d at 590. The court noted that Clark did not seek to substitute counsel or complain about his other

attorney—who he thought was "doing a fine job"—but sought only to discharge his lead counsel. *Id*.

In this appeal, Clark does not claim that the trial court was required to substitute counsel, nor does he identify an act of alleged ineffective assistance of counsel or claim that the trial court failed to conduct *any* hearing. Rather, as in his state habeas claim, he asserts that an irreconcilable conflict existed with his lead counsel and that the trial court was required "to conduct an evidentiary hearing to decide whether the conflict rose to a Sixth Amendment violation." That claim is foreclosed by our decision in *Carter*.

On direct appeal in *Carter*, the California Supreme Court denied the petitioner's claim that "the trial court erred by failing to adequately inquire into the conflict" and by failing to appoint new counsel. 946 F.3d at 506–07. On federal habeas review, we deferred to that ruling because the Supreme Court "has never held that an irreconcilable conflict with one's attorney constitutes a per se denial of the right to effective counsel." *Id*. at 508.

Here, Clark asserts only that his conflict with his lead counsel "guaranteed an inadequate defense presentation," but he neither raises a claim of ineffective assistance nor identifies a single act of ineffectiveness. Accordingly, because Clark's claim is precisely the kind of per se claim rejected by *Carter* as ungrounded in any clearly established Supreme Court authority, "[t]his proves fatal to [Clark's] claim." *Id.*

Clark's request for a federal evidentiary hearing as to the conflict also fails. First, an evidentiary hearing is precluded by *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011), which generally limits federal habeas review to the state-court record. *See Gulbrandson v. Ryan*, 738 F.3d 976, 993–94

(9th Cir. 2013).  Second, a hearing is precluded by 28 U.S.C. § 2254(e) because Clark failed to develop any additional facts at trial and solely raised the claim on appeal.  *See Deere v. Cullen*, 718 F.3d 1124, 1148 (9th Cir. 2013).  Third, Clark has not alleged facts that, if proven true, would entitle him to relief.  *See Rich v. Calderon*, 187 F.3d 1064, 1067–68 (9th Cir. 1999).  Fourth, because the Supreme Court has never recognized a Sixth Amendment claim based on an irreconcilable conflict in the absence of resulting ineffectiveness, a hearing would be futile.  *See Carter*, 946 F.3d at 508.  Thus, Clark's substitute-counsel claim fails under AEDPA review.

Therefore, the district court properly concluded that Clark's *Marsden* rights were not violated, nor was the California Supreme Court decision contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

## VI

In sum, the district court correctly concluded that the California Supreme Court's decision was not, in any respect, contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court.  We affirm the judgment of the district court denying federal habeas relief.

**AFFIRMED.**