Filed 5/30/24  P. v. Ware CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　　　v.<br><br>CHRISTOPHER SAMUEL WARE,<br><br>　　Defendant and Appellant. | A168221<br><br>(Alameda County<br>Super. Ct.No. 20-CR012239A) |

Defendant Christopher Samuel Ware appeals for the second time from his sentence of seventeen years, four months for two robbery convictions.  By unpublished decision in *People v. Ware* (Jun. 17, 2022, A162314) (*Ware I*), we affirmed the convictions but vacated the sentence and remanded for further sentencing proceedings in light of Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567).

The trial court conducted a brief resentencing on remand, and reimposed the original sentence.  We conclude that, in doing so, the court erred in two respects:  first, under Penal Code section 1170, subdivision (b)(5),[1] by relying on an aggravating factor that was also used as a sentencing

---

[1] All further undesignated statutory references are to the Penal Code. All rule references are to the California Rules of Court.

1

enhancement, and second, by summarily refusing to entertain Ware's motion for replacement of his counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

We now vacate the sentence and once again remand for further consideration of the sentence.

## I. BACKGROUND

"In July 2020, Ware robbed a 75-year-old woman at gunpoint in front of the woman's house.  Ware took the woman's purse, which contained a credit card that someone used shortly after the robbery to make a $500 purchase. [¶] Two weeks later, Ware approached a woman walking to her car in a store parking lot and grabbed the woman's purse, causing her to fall to the ground. Ware then ran off with the purse.  A warrant was issued for Ware's arrest that same day.  [¶] About a week later, police arrested Ware after they spotted him entering a vehicle.  A search of the vehicle revealed a loaded handgun.

"In November 2020, Ware was charged by consolidated information with two counts of second degree robbery (§ 211), one with special allegations that Ware personally used a firearm in the commission of the offense (§§ 12022.5, subd. (a), 12022.53, subd. (b)); identity theft (§ 530.5, subd. (a)); possession of a firearm by a felon (§ 29800, subd. (a)(1)); carrying a loaded firearm on one's person in a city (§ 25850, subd. (a)) with a special allegation that he was not in lawful possession of the firearm as a prohibited person (§ 25850, subd. (c)(4)); carrying a concealed firearm within a vehicle (§ 25400, subd. (a)(1)), again with a special allegation that he was not in lawful possession of the firearm (§ 25850, subd. (c)(4)); and possession of ammunition by a prohibited person (§ 25400, subd. (c)(4))."  (*Ware I, supra,* A162314.)

Ware agreed to bifurcated court trial on his prior convictions and stipulated to two felonies, a February 2017 conviction for burglary (§ 459), and an October 2019 conviction for assault upon the person of another likely to produce great bodily injury (§ 245, subd. (a)(4)). At the time of each of the charged offenses, as well as the two stipulated prior convictions, Ware was on felony probation.

During trial, Ware asked the court if he could state some concerns about his appointed counsel on the record. The court sought clarification from Ware as to whether he was seeking to replace his counsel. Ware said he was not; he merely wanted to document what he felt were lapses in communication. The court offered to clear the courtroom and asked clarifying questions about the nature of defendant's complaints about his counsel. Ware again stated that he was not seeking to replace his counsel, and the following colloquy took place: "THE COURT: All right. So you said you do feel uncomfortable. Are you asking that Mr. Alpers be relieved as your attorney? THE DEFENDANT: No, because I do want to move on with the process, but I just wanted to say this on the record." Nonetheless, in an abundance of caution, the court cleared the courtroom and conducted a *Marsden* hearing. In a confidential proceeding, the court conducted various inquiries pertinent to *Ware*'s dissatisfaction with his counsel. Trial continued thereafter, with the same lawyer, Steven Alpers, representing Ware.

In February 2021 the jury found Ware guilty as charged on all counts and found the firearm allegations true. At the sentencing hearing the following month, the trial court imposed an aggregate prison term of 17 years, four months, explaining as follows: Ware is sentenced "to the upper term of five years on the first count of second degree robbery and to the upper term of 10 years for the firearm enhancement for that count[,]" plus "one-third of the midterm for counts two, three, and four, for a total of two years

3

four months for those counts, to be served consecutively with the 15-year term for count one." (*Ware I, supra,* A162314.) The court stayed the sentences on the rest of the counts pursuant to section 654. (*Ibid.*)

On appeal, we affirmed the judgment of conviction but vacated the sentence and remanded for resentencing, because in light of changes in the law brought about by Senate Bill No. 567, applied retroactively,[2] "the record does not clearly indicate that the trial court would have imposed the upper term sentences despite the amendments to section 1170, subdivision (b)." (*Ware I, supra,* A162314.)

We explained, "Although the trial court discussed Ware's criminal history and his probation performance, it also mentioned several other aggravating circumstances, noting that there are 'so many' factors in aggravation related to his more recent crimes. The record does not indicate that Ware stipulated to the facts underlying those aggravating circumstances or that the jury or judge at trial found those facts true beyond a reasonable doubt. The trial court stated it was selecting the upper term 'for the reasons . . . stated' and did not expressly exclude any of the improper aggravating circumstances. We cannot discern from this record whether the trial court would have found a departure from the presumptive middle term to be justified based solely on Ware's criminal history." (*Ware I, supra,* A162314.)

At the proceeding upon remand, the court reimposed the original sentence, this time stating as follows: "I believe that one factor in aggravation, which was proven, which the jury found, was that he was armed

---

[2] The revisions to California's triad felony sentencing scheme enacted by Senate Bill 567 apply retroactively to this case as "an ameliorative change in the law applicable to all nonfinal convictions on appeal. (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308.)" (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039, fn. omitted.)

4

with or used a weapon at the time of the commission, which is Rule 4.421 (a)(2). I find that factor in aggravation. That justifies my imposition of the upper term in this case." The court further stated, "I thought I was clear in my sentencing statements about why I reached the aggravating term. I'm aware of his age. I would not exercise my discretion based on his age." The court also mentioned, "how these crimes were committed: "Two separate 211s, wherein one at least he followed the person, the sophistication, things of that nature."

When the parties were asked whether they had anything they wished to say, Ware's counsel stated, "my client . . . wants a *Marsden*," at which point the court responded, "Denied. He's already been—this is on for re-sentencing. This is just something that I have to do, that this court has to take into consideration. So denied." Ware did not object to the court's reliance on the jury's finding he was armed with or used a weapon as a justification for selecting the upper term on count 1.

This appeal followed.

## II. DISCUSSION

Ware raises two issues in this appeal. First, citing section 1170, subdivision (b)(5), he argues the court abused its discretion by relying on the jury finding that he was armed and used a weapon in the robberies to justify selection of the upper term on count 1. Second, he argues he requested a *Marsden* hearing at the resentencing proceeding, and the court erred by denying the motion without giving him an opportunity to state his complaints about his counsel's representation. We address these issues in turn.

### A. *Penal Code Section 1170, Subdivision (b), Error*

Section 1170, subdivision (b)(5) provides that "[t]he court shall set forth on the record the facts and reasons for choosing the sentence imposed. The court may not impose an upper term by using the fact of any enhancement

5

upon which sentence is imposed under any provision of law." Ware contends the trial court violated this statute by imposing an upper term sentence for count 1 based on an aggravator (he was armed with and used a firearm) that also served as a sentencing enhancement. The Attorney General concedes error, and we accept the concession. But he argues Ware forfeited the issue on appeal by failing to raise it below, citing *People v. Scott* (1994) 9 Cal.4th 331.

*Scott* does not resolve the problem presented by the conceded section 1170, subdivision (b)(5) error on this record. We are not dealing simply with how the trial court exercised its triad discretion or whether it provided an adequate explanation of its discretionary sentencing choice. The court's intention to impose upper term sentences is clear, and, although its stated reasons are somewhat general, its reasoning is evident. The problem, instead, is whether the court had triad discretion to exercise at all.

As amended by Senate Bill 567, section 1170, subdivision (b)(2) provides that "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

In *Ware I*, we could not determine from the record of the original sentencing whether the upper term sentence imposed for count 1 is authorized by section 1170, subdivision (b)(2). From the record of the resentencing, we still cannot discern whether there is a basis for upper term sentencing eligibility. And if the court's upper term sentencing choice was unauthorized, the rule of forfeiture does not apply, which is an exception to the forfeiture doctrine. (*People v. Scott*, *supra*, 9 Cal.4th at p. 354.)

The Attorney General argues in the alternative that any section 1170, subdivision (b)(5) error was harmless.  Given the trial court's clearly expressed intention to impose upper term sentences and Ware's two admitted prior convictions, the Attorney General argues, "there is no reasonable probability . . . the court would have imposed a lesser sentence had it been aware that it could not rely on appellant's use of a weapon in connection with the crime."

In support of his harmless error argument, the Attorney General makes only a generalized reference to aggravating factors in rule 4.421, without specifying any particular portion of the rule.  And he does not address the particulars of the standard of review he urges us to apply.[3]

_____

[3] Faced with trial court error in imposing upper term sentences without the requisite jury findings or stipulated admissions under section 1170, subdivision (b)(2), most courts have employed some type of harmless error analysis. (See, e.g., *People v. Lopez* (2022) 78 Cal.App.5th 459, 467, fn. 11; *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1113.)  But courts have applied varying standards of review.  (Compare, e.g., *People v. Lopez, supra*, 78 Cal.App.5th at p. 467 & fn. 11 [when a reviewing court cannot conclude beyond a reasonable doubt under *Chapman* standard that a jury would have found true all the aggravating circumstances beyond a reasonable doubt, it must still ask whether it is reasonably probable the trial court would have exercised its discretion to impose a sentence less than the upper term in the absence of the unproved aggravating circumstances], with *People v. Dunn* (2022) 81 Cal.App.5th 394, 408–410, review granted Oct. 12, 2022, S275655 [first *Lopez* harmless error step should employ a mix of both *Chapman* and *Watson* standards and second step should employ only *Watson* standard]; see *Chapman v. California* (1967) 386 U.S. 18; *People v. Watson* (1956) 46 Cal.2d 818.)  The appropriate harmless error standard is now being considered by the California Supreme Court.  (See *People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted Aug. 10, 2022, S274942, argued May 9, 2024; *People v. Falcon* (2023) 92 Cal.App.5th 911, 938, review granted Sept. 13, 2023, S281242; *People v. Butler* (2023) 89 Cal.App.5th 953, 959–960, review granted May 31, 2023, S279633; *People v. Ross* (2022) 86 Cal.App.5th 1346,

Drawing some inferences from the two stipulated prior convictions, at least three aggravating factors listed in rule 4.421(b) *might* apply here. (See rule 4.421(b)(2) [prior convictions that are numerous or of increasing seriousness], (b)(3) [service of prior prison sentence], (b)(5) [defendant's prior performance on probation was unsatisfactory].) But we decline to guess which one the trial court would apply through the prism of harmless error analysis.

Of these three provisions, rule 4.421(b)(2) strikes us as the aggravating circumstance that seems to be most likely applicable, since the two felony convictions Ware admitted, by their nature—and without additional judicial "consideration" under section 1170, subdivision (b)(5)— appear to be of "increasing seriousness." But it is not our role on appeal to identify and find record support for aggravating factors we think the trial court probably would have relied upon had it appreciated the need to specify section 1170, subdivision (b)(2) aggravation for count 1 sentencing, in addition to the jury's arming and use findings.

Because the trial court expressly relied on a single, invalid aggravating factor to justify upper term eligibility on count 1, we will vacate the sentence a second time. All we are prepared to say at this stage is that, following the enactment of Senate Bill 567, the triad sentencing scheme now requires trial courts to be especially attentive to making the requisite record at sentencing (§ 1170, subd. (b)(5) ["The court shall set forth on the record the facts and reasons for choosing the sentence imposed"]) and, with that in mind, the record before us is insufficient for meaningful review. We need not delve into harmless error since we must vacate the sentence to rectify a separate error

1354–1355, review granted Mar. 15, 2023, S278266; *Dunn*, at pp. 408–410, rev. granted.)

8

that we cannot deem harmless on this record, as explained below in Part II.B. On remand, we will direct the trial court to comply fully with section 1170, subdivision (b)(5), and to clarify exactly what rule 4.421 "[c]ircumstances in aggravation" render Ware eligible for upper term sentencing under section 1170, subdivision (b)(2).

## B. *Marsden* Error

Even if we were inclined to review the record on our own and attempt to determine whether the record is adequate to support a determination that one or more rule 4.421 factors would have been found true by a jury beyond a reasonable doubt on the facts presented, the second ground for Ware's appeal raises a separate problem—failure to hold a *Marsden* hearing despite a clear request for one.

The applicable *Marsden* principles here are well-established. When a defendant asks to replace his appointed attorney, the trial court is required to "permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance." (*People v. Smith* (2003) 30 Cal.4th 581, 604.) "A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (*Ibid.*)

A defendant's Sixth Amendment right to effective assistance does not mean that he possesses the right to present a defense of his choosing. (See *People v. Cole* (2004) 33 Cal.4th 1158, 1192; *People v. Hamilton* (1989) 48 Cal.3d 1142, 1162.) But it does violate the Sixth Amendment for the court to look away where " 'to compel one charged with [a] grievous crime to undergo a trial with the assistance of any attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever.' " (*Schell v. Witek* (9th Cir. 2000)

9

218 F.3d 1017, 1025.) The right to a *Marsden* hearing applies throughout a criminal proceeding, prior to trial, at trial and in post-trial proceedings. (*People v. Sanchez* (2011) 53 Cal.4th 80, 88).

"Whenever the motion is made, the inquiry is forward-looking in the sense that counsel would be substituted in order to provide effective assistance in the *future*. But the decision must always be based on what has happened in the *past*." (*People v. Sanchez*, *supra*, 53 Cal.4th at p. 88.) The fact that a *Marsden* motion has been made and denied in the past does not mean that another such motion may be denied summarily without affording the defendant an opportunity to explain his reasons for making it, since circumstances during criminal proceedings constantly change. (See, e.g., *People v. Ng* (2022) 13 Cal.5th 448, 481, 495–496, 498–499 [defendant made 37 *Marsden* motions, one of which, the twenty-third, the court granted].)

The denial of a *Marsden* motion is reviewed for abuse of discretion. (*People v. Smith*, *supra*, 30 Cal.4th at p. 604.) But a trial court's refusal "to afford a defendant an opportunity to set forth the reasons underlying his request for the substitution of appointed counsel constitutes an abuse of discretion by the court." (*People v. Chavez* (1980) 26 Cal.3d 334, 346.) There is no question Ware sought to make a *Marsden* motion here. Because the record plainly shows that the trial court brushed aside Ware's request for "a *Marden*" aside without inquiring into the basis for it, we must consider whether the error was prejudicial.

Where we determine the failure to hold a *Marsden* hearing was an abuse of discretion, the error "does not establish a rule of per se reversible error. [Citation.]" (*People v. Washington* (1994) 27 Cal.App.4th 940, 944.) Reversal is not required if the record shows beyond a reasonable doubt that the defendant was not prejudiced by the trial court's failure to hold a *Marsden* hearing. (See *People v. Taylor* (2010) 48 Cal.4th 574, 600–601;

*People v. Reed* (2010) 183 Cal.App.4th 1137, 1148; *People v. Govea* (2009) 175 Cal.App.4th 57, 61 (*Govea*).) The prejudice standard is the demanding test of harmless error beyond a reasonable doubt. (*Chapman v. California, supra,* 386 U.S. 18.)

The Attorney General argues that to the extent the trial court erred in failing to inquire into the basis for his *Marsden* motion at resentencing, the error was harmless. In support of this argument, he relies on cases that involved section 1368 mental competency issues. (E.g., *People v. Taylor, supra,* 48 Cal.4th at pp. 600–601; *Govea, supra,* 175 Cal.App.4th at p. 61.) In each one, a doubt was declared as to the defendant's competency to stand trial; the defendant made a *Marsden* motion before the competency hearing; and only later, after the criminal proceedings were resumed following restoration of competency, was a *Marsden* hearing held, at which point counsel was replaced. Faced with those circumstances, the courts in *Taylor* and *Govea* ruled that, since the defendant eventually received "everything he sought" (*Govea,* at p. 62), any error in not holding a *Marsden* hearing more promptly was harmless.

These cases are inapposite. The problem here is not simply a delayed *Marsden* inquiry, but an outright failure to conduct any inquiry at all. Under *Chapman* (or any other prejudice standard for that matter), we cannot simply infer from the court's willingness to entertain a previous complaint from Ware about his counsel's performance at trial that his later *Marsden* motion at the resentencing proceeding would certainly have been denied. Obviously, the array of issues defense counsel must handle at a trial on guilt or innocence overlaps with sentencing issues, but counsel's task at sentencing is also quite different in many respects.

Whether Ware's *Marsden* motion had any merit depends on the nature of his dissatisfaction, which was never explored. The trial court failed to

make a record about what Ware's *Marsden* complaints were; whether those complaints had anything to do with issues that were or could have been raised at the resentencing proceeding; or whether the same complaints had been raised previously. Because, on this record, we cannot say beyond a reasonable doubt that Ware's complaints about his counsel at his resentencing hearing were simply tactical and would not have made a difference to the sentencing outcome, we must remand so that Ware can be afforded an opportunity to explain why he believes he is entitled to new counsel at the further resentencing proceeding we are now ordering.

## III. DISPOSITION

The sentence is vacated and the cause is remanded for further resentencing proceedings. The court is directed to afford Ware an opportunity to explain the basis for his *Marsden* motion, and then to resolve that motion after considering his stated reasons for making it. The court is also directed to conduct further resentencing proceedings in full compliance with section 1170, subdivision (b)(5), and in the course of those proceedings to clarify exactly what rule 4.421 "[c]ircumstances in aggravation" it is relying upon to trigger upper term sentencing eligibility on count 1.

STREETER, Acting P. J.

WE CONCUR:

GOLDMAN, J.
HITE, J.*

---

* Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12